Filed 10/16/13

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re Ricardo C., a Person Coming Under the Juvenile Court Law.  | |
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>RICARDO C.,<br><br>        Defendant and Respondent. | E057445<br><br>(Super.Ct.No. RIJ1200870)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Roger A. Luebs, Judge.

Reversed.

Paul E. Zellerbach, District Attorney, Emily Hanks, Deputy District Attorney, for Plaintiff and Appellant.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Respondent.

1

The People filed a petition in the juvenile court, alleging that Ricardo C. (minor), a minor, had committed the offenses of attempted robbery and making criminal threats, as well as a number of other offenses. Pursuant to a negotiated agreement, minor agreed to admit the attempted robbery and criminal threats allegations, and the remaining allegations would be dismissed. Part of the stipulated disposition was that minor would be placed in the Youthful Offender Program (YOP) at the Indio Juvenile Hall. At the hearing, however, the juvenile court ordered a different, less restrictive placement. The People appeal, contending that the disposition in contravention of the negotiated agreement was an unlawful order. We reverse.

<u>FACTS AND PROCEDURAL HISTORY</u>

According to the detention hearing report, an eighth grade student, B.D., was walking home from school on April 15, 2012, with some friends. B.D. was playing with a can of Silly String, when minor, going in the opposite direction, came riding by on his skateboard. B.D. accidentally sprayed some of the Silly String on minor. Minor hopped off his skateboard, approached B.D., and demanded that he give him the can of Silly String. B.D. apologized to minor, and handed him the can of Silly String, saying, "Here, you can have it." Minor threw the can onto the ground and demanded that B.D. give him his cell phone. B.D. said no, but minor repeated his demand for the cell phone. B.D. again refused. Minor then punched B.D. in the face several times, knocking him to the ground. Minor kicked B.D. in the back before running away. B.D. and his mother reported the matter to the school resource officer at minor's high school. When the

school resource officer questioned minor about the incident, minor admitted he had punched the victim, saying, "Oh yea[h], that kid pissed me off."

A month later, on May 14, 2012, minor took the cell phone of a classmate, J.F., from his desk at school. J.F. asked minor to give his phone back, but minor laughed at him and refused. Minor ran off campus and did not return to school for the next two days. J.F. made a report to the police about the stolen phone.

On August 15, 2012, the People filed a petition in juvenile court, charging minor with attempted robbery of B.D., assault on B.D., receiving stolen property (J.F.'s cell phone), and theft of the cell phone (mistakenly alleged to be the property of B.D.). About a week after the petition was filed, minor went to J.F.'s residence to confront him about reporting the stolen phone. Minor said, "If I end up going to juvenile hall because you are pressing charges, I'm going to fuck you up!" J.F. denied pressing charges, but minor retorted, "You are lying, I know it's you, I just want to get one good hit in!" Minor clubbed J.F. on the side of the head with a closed fist. Minor left when J.F.'s mother threatened to call police. When minor was later taken into custody, he admitted finding out where J.F. lived so he could confront him about "ruining [my] life" by pressing charges. Minor stated that he hit J.F. because he wanted him to admit that he was the one pressing charges against him.

After the confrontation with J.F., the People filed another petition on August 27, 2012, alleging that minor had committed the offenses of attempting to dissuade a witness, assault by means of force likely to produce great bodily injury, and two counts of making criminal threats against both J.F. and J.F.'s mother.

3

In September 2012, the parties appeared in court, and reached a settlement. When defense counsel described the agreement to the juvenile court, he stated, "There is a disposition reached in this matter wherein minor will enter admissions in one petition [to the attempted robbery]. . . . In the other petition he is going to be admitting [one of the criminal threats allegations]. Remaining counts in both petitions will be dismissed with comment and restitution. He will be determined a ward and placed at YOP and refer it out for dispositional report." The court stated that it found "that disposition to be a reasonable one. I suppose after reading the report I might take another view, but at this point anyway it seems to be a reasonable approach. . . ."

In taking the admissions from minor, the court admonished him, "Do you realize if you tell me these allegations from these two Paragraphs [*sic*] are true, then a judge could put you in a state or county facility including a locked facility like juvenile hall or the Youthful Offender Program facility in Indio for up to three years, six months. Do you understand that?" Minor replied that he did understand. The court fixed the criminal threats charge as a felony rather than a misdemeanor. "The attempt[ed] robbery is, of course, a felony. In terms of disposition the parties have agreed that the minor is going to be declared a ward and be committed to a placement in the Youth Offender Program in Indio." The court referred the matter to the probation department for a report to recommend "complete, appropriate dispositional terms" for minor. The court set a hearing to review the report, and advised the parties, "if upon reviewing the report I find something inappropriate about the disposition[,] the minor because of the agreed upon

4

terms of his admissions today could withdraw his admission, but I don't expect that to happen. Otherwise he is going to live with whatever disposition I give him."

The probation department prepared a dispositional report in advance of the hearing. The interagency placement screening committee that reviewed minor's case concluded that out-of-home placement was necessary. Minor needed services to address anger issues, substance abuse issues, negative peer associations (gang contacts), grief counseling, and academic deficits. Minor's mother was "too complacent" about minor's behavior to supervise him adequately under one of the programs considered.

Several features of minor's case were concerning. He brutally attacked a younger child over a petty matter: accidentally being sprayed with Silly String. When a petition was filed, describing the theft of a classmate's cell phone, minor purposely sought out the victim's address, went to his home, threatened the victim and his mother, and physically struck the victim in retaliation for reporting the crime. Minor's general anger issues had led to several fights, which resulted in disciplinary actions at school. Minor was not remorseful, and refused to apologize to the victims. He had other difficulties, including substance abuse, poor school attendance, and poor grades. He denied membership in a gang, but he was affiliated with a number of gang members. His older brother had been a gang member and had died when minor was 12 years old.

Minor's mother was the one stable element in minor's life, but she appeared unaware of or in denial about minor's poor academic progress, his use of drugs and alcohol, his frequent fights, and his disciplinary issues at school. She had also failed to get any help for minor with respect to his grief over his brother's death and the

5

abandonment of the family by minor's father. The mother was unable to maintain control of minor's behavior.

Because of minor's "anger issues and impulsive and volatile actions," he was "at severe risk of harming others. Until he receives appropriate treatment, it is only a matter of time until he strikes out again and injures someone else." The probation department therefore recommended an out-of-home placement. Specifically, the probation department recommended that minor be "placed in a suitable foster/group home, relative home, county or private facility with no preference for such period as deemed necessary by staff/probation officer, further, that the minor not be placed at YOP Indio without further order of the court, . . ."

The treatment plan for minor indicated that the type of placement appropriate for minor would take into consideration, "the minor's need for the least restrictive, most family-like environment; the minor's age, sex, and cultural background; the planned parent/guardian contacts during the separation and the specific actions to be taken b[y] the parent/guardian/minor which will facilitate reunification; the appropriateness of attempting to maintain the special needs of the minor, including transportation, diet, clothing, recreation, and education, and the capability of [t]he care provider to meet the needs of the minor. The placement selection will be a safe setting that is the closest proximity to the parent/guardian's home, consistent with the minor's needs and best interests." Any placement would have to be able to dispense medications, treat

substance abuse, provide family counseling and individual and group therapy, contain an on-grounds school, isolate the minor from the community, provide a structured setting, instruct in independent living skills, and provide anger and grief counseling.

At the dispositional hearing, the court made findings in accordance with the probation report and case plan. The court declared minor a ward of the juvenile court and placed him in the custody of the probation officer. The court agreed that "the minor needs to be placed," but noted that the report "doesn't recommend the Youthful Offender Program in Indio. It just recommends some unspecified placement." Minor's counsel related to the court that, "the parties stipulated as part of the agreement that it would be YOP Indio. . . . It is unfortunate he does get referred out, because my information he has also been screened and accepted by Twin Pines Ranch. Which was not part of the deal, but now has the minor encouraged he is going to Twin Pines Ranch and going tomorrow rather than sitting on a waiting list to go to YOP."

The court opined that the parties might not be able to determine the disposition, because it "is the unique role of a judge to rehabilitate a minor to make sure he has appropriate orders for rehabilitation." The prosecutor objected that the People had dropped a number of outstanding charges, including at least one strike offense, on the understanding that the defense agreed minor would be placed at YOP. "And I would ask the Court to follow the district attorney and defense's agreed upon negotiation."

The court probation officer interjected that the screening committee was reluctant "to send the minor to YOP right out of the gate, because that is our most restrictive placement. And with probation we attempt to use escalating consequences. In this

7

matter the minor was screened for Twin Pines Ranch and accepted. There is a mental health component there. There is gang component. There is drug component. It is felt that he should get an opportunity to work on some of these problems at the ranch rather than at YOP." The probation department preferred to reserve YOP as a consideration for escalated placement, if minor failed to benefit from placement at Twin Pines Ranch. The court thereupon ordered that minor be placed in a "suitable foster/group home, relative home, county or private facility with preference for TWIN PINES RANCH . . . further, that the minor not be placed at YOP Indio without further order of the court, . . ."

The prosecutor asked the case to be recalled later the same day. The prosecutor argued that, because "the Court is not going to follow through with the negotiated disposition between the parties . . . I would ask the plea essentially be withdrawn, the Petition be reinstituted, and we would proceed on the Petition." The prosecutor indicated that a number of serious charges had been dismissed, specifically in contemplation of minor's agreement that he would be placed at YOP. The matter was referred to the probation department because "we can't place the minor without any social history. And that was the reason for it. Certainly the People would not have dismissed those charges unless the YOP was honored. That is my request at this point. I'm asking to proceed on the Petition in whole."

Defense counsel explained that one of the dismissed charges was a strike, and "we were interested in getting rid of the strike as part of the disposition. That is the reason we agreed to the disposition."

8

The court took the view that, even if the parties agreed to some disposition to accomplish their own purposes, the court was charged with a different and overriding duty. The court did not believe that it was bound by the parties' goals: "Especially in juvenile court the duty of the Court is to make appropriate rehabilitative orders with respect to the minor. In this case there is no basis in front of me to commit the minor to YOP. [¶] Secondly, I've already made my orders. Those are final orders. They were final two hours ago, or three hours ago. So I don't think there is a basis for unwinding them at this point." The court noted, "thirdly," that it had "never agreed to sentence the minor to dispose of the minor's case by sending him to YOP. I could never do that, because I never had information providing a basis to make that kind of commitment. [¶] Fourthly, if the parties wanted to know what recommendations probation might make, . . . they might have requested . . . some kind of pre-plea report. That didn't happen in this case." Minor had already made his admissions at the prosecutor's request, and the court had already dismissed other counts in the interest of minor, well before the current dispositional hearing. The court therefore denied the People's request to withdraw the plea agreement and reinstate the petitions.

The People have now appealed.

ANALYSIS

I. Contentions

The People contend that the juvenile court's dispositional order was unlawful, because it contravened the agreed-upon terms of a negotiated disposition. Minor responds that the matter is not cognizable on appeal, because the prosecution is

9

prohibited from appealing an order granting probation to a minor.  Minor urges that the

People's remedy is to seek review by a writ of mandate or prohibition.  (Welf. & Inst.

Code, § 800, subd. (c); see also *In re Jeffrey H.* (2011) 196 Cal.App.4th 1052, 1058

(*Jeffrey H.*).)[1]  The People reply, also relying on *Jeffrey H.*, that the appeal is not an

---

[1]    Welfare and Institutions Code section 800 provides in pertinent part as follows:
    "**(a)** A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as from an order after judgment. Pending appeal of the order or judgment, the granting or refusal to order release shall rest in the discretion of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken.

    "A ruling on a motion to suppress pursuant to Section 700.1 shall be reviewed on appeal even if the judgment is predicated upon an admission of the allegations of the petition.

    "A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired.

    "**(b)** An appeal may be taken by the people from any of the following:

    "**(1)** A ruling on a motion to suppress pursuant to Section 700.1 even if the judgment is a dismissal of the petition or any count or counts of the petition. However, no appeal by the people shall lie as to any count which, if the people are successful, will be the basis for further proceedings subjecting any person to double jeopardy.

    "**(2)** An order made after judgment entered pursuant to Section 777 or 785.

    "**(3)** An order modifying the jurisdictional finding by reducing the degree of the offense or modifying the offense to a lesser offense.

    "**(4)** An order or judgment dismissing or otherwise terminating the action before the minor has been placed in jeopardy, or where the minor has waived jeopardy. If, pursuant to this paragraph, the people prosecute an appeal of the decision or any review of that decision, it shall be binding upon the people and they shall be prohibited from

*[footnote continued on next page]*

10

appeal from the grant of probation, but rather an appeal from an illegal order: the order

denying the People's request to withdraw the plea bargain and reinstate the charges,

because the trial court unlawfully refused to honor the terms of the plea bargain.

## II. Standard of Review

The initial point in the appeal is whether or not Welfare and Institutions Code

section 800, subdivision (b)(5), authorizes the appeal and, at the same time, whether

Welfare and Institutions Code section 800, subdivision (c), nevertheless prohibits

proceeding by way of an appeal in this case. In other words, is the appeal from an

"unlawful order" (Welf. & Inst. Code, § 800, subd. (b)(5)), or is it an appeal that either

directly, or "in substance," challenges an order granting probation (Welf. & Inst. Code,

§ 800, subd. (c))? This is an issue of statutory construction, which we review de novo.

(*People v. Wills* (2008) 160 Cal.App.4th 728, 736.)

The next issue to be considered, if the procedural hurdle can be passed, is whether

the People may enforce the terms of the plea bargain, i.e., commitment of minor to YOP

(or alternatively, to rescind the plea bargain and reinstate the charges). A plea bargain

---

*[footnote continued from previous page]*
refiling the case which was appealed.

"**(5)** The imposition of an unlawful order at a dispositional hearing, whether or not the court suspends the execution of the disposition.

"**(c)** Nothing contained in this section shall be construed to authorize an appeal from an order granting probation. Instead, the people may seek appellate review of any grant of probation, whether or not the court imposes disposition, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation."

agreement is in the nature of a contract, and subject to the same rules of construction as other contracts. (*People v. Kim* (2011) 193 Cal.App.4th 1355, 1360 ["Plea bargains are generally governed by a specialized form of the law of contracts."].)

The appellate court applies the standards of review applicable to contracts generally. (*People v. Toscano* (2004) 124 Cal.App.4th 340, 345.) "[T]he 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.' [Citations.]" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co*. (2003) 107 Cal.App.4th 516, 520.)

### III. The Appeal Is Cognizable

In *Jeffrey H*., *supra*, 196 Cal.App.4th 1052, the parties to a juvenile delinquency proceeding announced ready on the last day to begin trial. No courtrooms were available on that day. Faced with the prospect of dismissing the petition, the juvenile court instead dismissed a robbery charge in one petition, added a new grand theft charge, and took the juvenile's change-of-plea admissions of the allegations, including the amended grand theft allegation. The prosecutor objected to this procedure as illegal judicial plea bargaining. The juvenile court overruled the prosecutor's objection, and proceeded with the disposition, placing the juvenile on probation. The prosecutor appealed, asserting that the juvenile court lacked authority to enter into a judicial plea bargain with the juvenile. It sought to vacate the plea, and sought reversal of the orders dismissing the robbery allegation and adding the grand theft allegation. (*Id*. at p. 1056.) The prosecutor justified the appeal under Welfare and Institutions Code section 800, subdivision (b)(4), which

12

authorizes a People's appeal from an order dismissing all or part of a case, before a minor has been placed in jeopardy.

The juvenile argued in opposition, however, that Welfare and Institutions Code section 800, subdivision (c), expressly prohibits an appeal from an order granting probation. Because the dismissal of the robbery charge (the authorization for a People's appeal under Welf. & Inst. Code, § 800, subd. (b)(4)) and resultant plea was the underlying basis for the juvenile court's grant of probation, the juvenile argued that the appeal was a de facto attack on the probation order, and therefore prohibited.

The Court of Appeal squarely rejected the juvenile's claim. The People did not appeal from the order granting probation. The juvenile conceded as much. The court also rejected the notion that the appeal was "in substance" an appeal from the grant of probation. "In the present case, the People have not appealed from an order granting probation. Instead, they have appealed from an order dismissing one count in a petition, adding another, and allowing Jeffrey to admit the new allegation as part of a plea bargain. In so doing, the People simply seek reinstatement of the original charges; they are not attacking, in either form or substance, the probationary grant itself. Because their appeal does not pose a direct threat to Jeffrey's probation, it is not barred by section 800, subdivision (c)." (*Jeffrey H.*, *supra*, 160 Cal.App.4th, 1052, 1058.)

The same reasoning applies here. Even though a reversal of the order in question would necessarily result in the plea (and the probation order) being vacated, that does not mean the order is non-appealable. The People appeal from the order dismissing certain allegations and accepting the minor's plea as to other allegations, without accepting other

13

portions of the plea agreement as negotiated by the parties. The People did not object to the grant of probation or any of the conditions of probation, except for the placement determination; the People had negotiated for a specific placement, which the juvenile court then failed to impose. The People argue that the court's failure to accept the bargain as negotiated was an unlawful plea bargain. As in *Jeffrey H.*, the People "simply seek reinstatement of the original charges; they are not attacking, in either form or substance, the probationary grant itself." (*Jeffrey H.*, *supra*, 196 Cal.App.4th 1052, 1058.)

Granted, the authorizing provision is different here from the one applicable in *Jeffrey H.* There, the appeal was authorized as from an order dismissing all or part of a case before jeopardy attached. (Welf. & Inst. Code, § 800, subd. (b)(4).) Here, the People point to Welfare and Institutions Code section 800, subdivision (b)(5), an appeal from an unlawful order entered at the disposition. Nevertheless, it remains true that the People do not challenge the grant of probation as such. The crux of the matter is that the court exceeded its authority in purporting to "accept" a plea bargain without honoring the terms of the plea bargain as agreed by the parties.

We now turn to the substance of the People's claim.

IV. <u>The Juvenile Court Was Not Empowered to Alter the Terms of the Plea Bargain</u>

<u>Negotiated Between the Parties</u>

Plea bargains are "an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' " (*People v. Segura* (2008) 44 Cal.4th 921, 929 (*Segura*).) Plea bargaining is a common feature in

14

juvenile delinquency proceedings, just as it is in criminal proceedings in adult court. Similar principles apply in both settings. (See, e.g., *In re Kenneth H.* (2000) 80 Cal.App.4th 143, 148 [" 'It is well settled that a plea bargain is a tripartite agreement which requires the consent of the defendant, the People and the court.' "]; *In re Jermaine B.* (1999) 69 Cal.App.4th 634, 639 [" 'Plea bargaining is an accepted practice in our criminal justice system.' "].)

A plea bargain is a contract between the accused and the prosecutor. (*People v. Vargas* (2001) 91 Cal.App.4th 506, 533.) Both these parties are bound to the terms of the agreement; when the court approves the bargain, it also agrees to be bound by its terms. (*People v. Armendariz* (1993) 16 Cal.App.4th 906, 911.) Both the accused and the People are entitled to the benefit of the plea bargain. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 80 [" 'When a guilty . . . plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties . . . must abide by the terms of the agreement.' "].) "When either the prosecution or the defendant is deprived of benefits for which it has bargained, corresponding relief will lie from concessions made." (*People v. Collins* (1978) 21 Cal.3d 208, 214.)

"Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.]' " (*Segura, supra,*

15

44 Cal.4th 921, 931; *People v. Ames* (1989) 213 Cal.App.3d 1214, 1217.)

Here, the juvenile court properly adverted to its own inherent discretion and duty to select a disposition that was in the best interest of minor. The court was correct that the parties could not themselves create a bargain that would usurp the juvenile court's discretion, or bind the court to a disposition the court viewed as inconsistent with its duty. The juvenile court had duly advised minor that, although it initially approved the plea bargain, it might withdraw that approval, depending upon the results of the probation report and the court's evaluation of an appropriate disposition. "[T]he court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (*People v. Johnson* (1974) 10 Cal.3d 868, 873.) "Such withdrawal is permitted, for example, in those instances where the court becomes more fully informed about the case [citation], or where, after further consideration, the court concludes that the bargain is not in the best interests of society." (*People v. Superior Court (Gifford)* (1997) 53 Cal.App.4th 1333, 1338.) In deciding whether or not to withdraw approval of a plea bargain, the court may of course "be expected to consult the probation report . . . ." (*People v. Stringham* (1988) 206 Cal.App.3d 184, 194.) That is evidently what occurred here. The juvenile court considered the probation report, including the probation department's reasons for recommending a placement other than the agreed-upon assignment to YOP. The court exercised its independent discretion to select a placement at Twin Pines Ranch, rather than the agreed-upon placement at YOP. Once it determined to do so, however, the juvenile court had effectively withdrawn its approval of the plea bargain. Under such circumstances, the court could not proceed to apply and enforce

16

certain parts of the plea bargain, while ignoring the provision that had been material to the People's agreement to the bargain. The court was therefore constrained to reject the plea bargain, and to restore the parties to their former positions. In other words, the court should have set aside the plea and reinstated all the allegations of the petitions filed against minor.

## DISPOSITION

The juvenile court failed to honor the terms of the plea bargain as agreed between minor and the People, i.e., it refused to place minor in the YOP program. This refusal was an unlawful order from which the People were entitled to appeal; the People's appeal was not an appeal from an order granting probation. Because the juvenile court failed to honor the terms of the plea bargain, its remedy was to reject the plea bargain, to withdraw minor's admissions, to reinstate the dismissed allegations, and to proceed on the petitions as originally filed. The judgment is therefore reversed.

CERTIFIED FOR PUBLICATION

McKINSTER
J.

We concur:


HOLLENHORST
Acting P. J.


MILLER
J.

17