Filed 12/30/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


THIRD APPELLATE DISTRICT


(Sacramento)

----

|  |  |
|---|---|
| K. R., | C079548 |
| Petitioner, | (Super. Ct. No. JV134953) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Stay issued. Petition denied. James P. Arguelles, Judge.

Paulino G. Duran, Public Defender, Arthur L. Bowie and Patricia Beza Contreras, Assistant Public Defenders, for Petitioner.

No counsel for Respondent.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jesse Witt, Deputy Attorneys General, for Real Party in Interest.

The question in this case is whether K. R. (the minor) has a right under our Supreme Court's decision in *People v. Arbuckle* (1978) 22 Cal.3d 749 to insist that Judge Jack Sapunor preside over the disposition of his admissions that he twice violated the terms of his probation in a juvenile delinquency proceeding. For the reasons set forth below, we conclude he does not. While the minor certainly had a reasonable expectation that he would receive the agreed-upon disposition that was part of the plea agreement approved by Judge Sapunor, and the refusal by Judge James P. Arguelles to impose that disposition certainly entitles the minor to withdraw his negotiated plea, the minor has failed to show that he entered into the plea agreement in expectation of and reliance upon Judge Sapunor conducting the disposition hearing. Thus, the minor is not entitled to have the disposition hearing set in front of Judge Sapunor, nor is he entitled to an order requiring Judge Arguelles to impose the agreed-upon disposition. Accordingly, we will deny the minor's petition for a writ of mandate and vacate our stay on the juvenile court proceeding.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Preliminary Matters*

Before we set forth the facts underlying this mandamus proceeding, we first address two procedural matters.

First, we note that in response to the minor's writ petition, this court issued an order to show cause, and in response to the order to show cause, the People filed a document they labeled a "return," but which was neither a demurrer nor a verified answer to the verified allegations of the minor's petition; instead, the People's "return" was essentially in the form of an unverified legal brief like those commonly filed in direct appeals, separated into three sections: a statement of the case, a statement of facts, and argument. This is not the proper procedure. (See Cal. Rules of Court, rule 8.487(b)(1) ["If the court issues an alternative writ or order to show cause, the respondent or any real

2

party in interest, separately or jointly, may serve and file a return by demurrer, verified answer, or both"]; *Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1085 [noting that, "[b]y filing a responsive brief" rather than a return by demurrer or verified answer, "the real parties in interest did not follow the correct procedures"].)

"The failure to submit a return with a verified answer or demurrer is not a technicality, but is an integral and critical step in the procedure for determining the merit of a petition for extraordinary relief." (*Bank of America, N.A. v. Superior Court*, *supra*, 212 Cal.App.4th at p. 1085.) One possible consequence of filing an unverified return that is neither a demurrer nor an answer is that the return will be stricken and therefore not considered in determining the merits of the mandate petition. (See *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287.) That could be fatal.

Fortunately for the People, there is a less catastrophic consequence available to us to address their failure. "In the absence of a true return, all well-pleaded and verified allegations of the writ petition are accepted as true." (*Bank of America, N.A. v. Superior Court*, *supra*, 212 Cal.App.4th at p. 1084; see also *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 741; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 996, fn. 2.) Applying this rule, the People's "return" is effectively treated as a return by demurrer, because a demurrer admits the facts pleaded in a writ petition. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Thus, we take the facts below from the well-pleaded, verified allegations of the minor's writ petition.[1]

---

[1]     Fortunately for the People, those "facts" do not include certain of the minor's assertions in his petition, like that the trial court "illegally and improperly denied [his] right to have his negotiated disposition imposed by the judge that took his plea/admission." That allegation, like others in the petition, is not an allegation of *fact*, but rather a legal conclusion, which a demurrer does not admit. (See *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 ["A demurrer admits all material and issuable facts properly pleaded" but "does not admit contentions, deductions or conclusions of fact or law"].)

Second, we note a deficiency involving the exhibits attached to the minor's writ petition. A petition for a writ of mandate must be verified. (Code Civ. Proc., § 1086; Cal. Rules of Court, rule 8.486(a)(4).) In addition, "[a] petition that seeks review of a trial court ruling must be accompanied by an adequate record, including copies of: [¶] (A) The ruling from which the petition seeks relief; [¶] (B) All documents and exhibits submitted to the trial court supporting and opposing the petitioner's position; [and] [¶] (C) Any other documents or portions of documents submitted to the trial court that are necessary for a complete understanding of the case and the ruling under review." (Cal. Rules of Court, rule 8.486(b)(1).)

Because the petitioner's right to relief will ordinarily "be resolved upon the parties' verified papers" (*Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201, 205), without the taking of additional evidence, it is important that the verification of the petition encompass not only the allegations of the petition but also the authenticity and accuracy of the exhibits submitted in support of the petition. (See *ibid.* ["A valid petition for mandate and such exhibits as may be referenced or incorporated therein will ordinarily state facts, verified as required by Code of Civil Procedure section 1086, calling for judicial relief," italics omitted]; 1 Appeals and Writs in Criminal Cases (Cont.Ed.Bar 3d ed. 2014) § 8.42, p. 8-37 ["The record should be verified by specific reference in the verified petition, by separate declaration, or by certificates"].)

Here, at the end of the substantive allegations detailing the underlying facts, the petition lists 14 exhibits, introduced by the assertion that "[t]he following documents reflecting the above proceedings are attached hereto and incorporated herein by reference." At no point, however, does the petition allege that the exhibits are true and correct copies of documents submitted to the juvenile court and/or contained in the juvenile court's file in this matter, nor did the minor submit a separate declaration

4

attesting to the authenticity and accuracy of the exhibits.[2] Thus, when the minor's attorney declares in the verification that she has "read the foregoing petition for writ of mandate and know[s] the contents thereof, and . . . the same [is] true to [her] own knowledge," she is not actually verifying that the attached exhibits are in fact what they purport to be. Nevertheless, because the People have not challenged the accuracy of any of the minor's exhibits, we will treat the exhibits as though they were properly authenticated and verified.

## II

### *The Juvenile Court Proceedings*

We turn to the relevant facts. In March 2013, when the minor was 13 years old, a delinquency petition was filed alleging he had committed the crimes of robbery, criminal threats, and brandishing a knife. In August 2013, Judge James P. Arguelles presided over a jurisdictional hearing on the petition in Department 97 and found the allegations true. At a disposition hearing in Department 97 in September 2013, Judge Arguelles granted the minor probation with a number of conditions, including 150 days of confinement.

In April 2015, the minor's probation officer filed a petition alleging the minor had violated his probation by remaining away from his home overnight without parental permission; failing to keep his probation officer informed of his address and telephone number; using marijuana; and committing the crimes of having marijuana on a school campus, falsely identifying himself to a law enforcement officer, and being a disruptive presence on a school campus. A week later, the People filed a petition alleging the minor

---

[2] The three exhibits that are copies of reporter's transcripts of relevant oral proceedings in the case do include copies of reporter's certificates certifying the completeness and accuracy of the transcriptions, but nowhere is it alleged or attested that these copies are true and correct copies of the original transcripts or certificates.

had violated his probation by committing the crimes of brandishing a firearm and brandishing a replica firearm.

On April 15, 2015, a detention hearing was held on both petitions in Department 92 before Judge Doris Shockley. Judge Shockley ordered the minor detained at juvenile hall and set a settlement conference hearing for April 28 in Department 97. She also ordered the probation department to prepare and submit a memorandum with appropriate recommendations for that hearing.

The probation department subsequently prepared a disposition report in which the department noted that while "a placement recommendation may be warranted," "the family [specifically, the minor's mother] has moved to the state of Nevada." Thus, the department recommended that the minor's probation be revoked and reinstated, that he be permitted to travel to Las Vegas to reside with his mother "pursuant to Interstate Compact protocol," and that the proceedings be transferred to the juvenile court of Clark County, Nevada, for final disposition.

On April 28, the parties, appearing before Judge Jack Sapunor in Department 97, stipulated to continue the settlement conference hearing to May 12. Judge Sapunor is a "regular visiting judge" in juvenile court in Sacramento County.

On May 12, the parties appeared before Judge Arguelles in Department 97 for the continued settlement conference hearing, but at the request of the minor's attorney, Judge Arguelles continued the hearing again, this time to May 28.

On May 28, the parties appeared before Judge Sapunor in Department 97 for the settlement conference hearing. The minor's attorney told the court the minor was prepared to admit the allegation in the first petition that he remained away from his home overnight without parental permission and the allegation in the second petition that he brandished a replica firearm "with an understanding that the disposition would be 54 days in custody in juvenile hall. He has 47 days as of today. [¶] The intention is in one week from today to recalendar this for proof that [the minor's grandmother] has purchased the

6

plane ticket to Nevada as the minor's mother is currently a resident of the state of Nevada, and this case would be transferred out for [supervision] to Nevada." The following colloquy then occurred:

"THE COURT: We're going to order the transfer today and then calendar it for a week to make sure that's been accomplished?

"[THE MINOR'S ATTORNEY]: Yes.

"THE COURT: That would be the Petitioner's recommended disposition?

"[THE PROSECUTOR]: Yes, your Honor."

At that point, the court solicited the minor's waiver of his right to a hearing on the alleged violations, his rights to remain silent and against self-incrimination, his right to confront and cross-examine the witnesses against him, and his right to testify. The minor then admitted the two violations of probation, the court granted the prosecutor's motion to dismiss the remaining allegations, and the court revoked and reinstated all previous orders. Before the court could finish the disposition, however, the probation officer serving as the presenter to the court interrupted: "Your Honor, just a thought real quick, I know we just took the admission. My only concern is if we come back a week from now and there's not a ticket bought and if we do the dispo today, we may have to unravel all that we're doing right now -- not the admission necessarily, just the disposition." The following colloquy then took place:

"THE COURT: Maybe we ought to put this out for a week to make sure that the disposition goes as planned.

"THE PRESENTER: That was just my thought that it all worked cleanly together. If for some reason it fell apart, we'll have to undo everything we're doing.

"[THE MINOR'S ATTORNEY]: I am fine with putting whatever we need necessary. My only request is that if we put the case over for one week, the time slots have to coordinate with the flight information. What is the quickest that he will be able to be processed to be released to get out to get on the plane?"

"THE PRESENTER: If we come in first thing in the morning, 8:30, 9:00, 9:30, let's say the flight's purchased for 1:30, 2:00 in the afternoon, the later the better, we would be good to go.

"[THE MINOR'S ATTORNEY]: That's agreeable. We can continue putting dispo over for the final terms to one week from today in the morning.

"THE PRESENTER: We can sign all the interstate on that date also.

"THE COURT: You want to have disposition one week from today which is going to be the 4th of June?

"[THE MINOR'S ATTORNEY]: Yes. The intention is for him to be deemed time served at that time.

"THE COURT: Yes. He's to be deemed time served on June 4th at 8:30. All the other conditions, this case would be transferred to Clark County, Nevada, for final disposition, and then he will be released to go to Las Vegas.

"Okay. So come back, then, on the 4th at 8:30."

The minute order for the May 28 hearing showed that the minor had admitted two violations and the remaining allegations had been dismissed, although the parties agreed they could be considered at the time of disposition. The minute order further showed that the disposition hearing was set for June 4.

On June 4, the parties appeared again in Department 97; this time, Judge Arguelles was presiding. Judge Arguelles noted that there was "a minute order saying that May 28th the minor admitted a violation of probation" and "[a]pparently, probation is recommending that [the minor] just be shipped off to Vegas to live with his mother." Judge Arguelles disagreed with that proposal and stated that his intention was "probably to send him to DJJ [Department of Juvenile Justice] but I'd be willing to hear argument for Level B." Because the minor's regular attorney was not present, however, Judge Arguelles agreed to continue the disposition hearing to June 8, when she would be back.

At the hearing on June 8, the minor's attorney objected to Judge Arguelles presiding over the disposition because "we have not affirmatively asserted an Arbuckle waiver in this case."  She requested that the matter be set for hearing in front of Judge Sapunor, who she believed was sitting in Sacramento for the next two weeks.  Judge Arguelles reiterated his disagreement with the proposed disposition of sending the minor to live with his mother in Las Vegas, set a schedule for the parties to brief the application of *Arbuckle*, and continued the matter to July 2.

On June 25, the minor commenced the present proceeding in this court by filing a petition for a writ of mandate, essentially requesting that we order Judge Arguelles to either:  (1) impose the disposition the parties had agreed upon in front of Judge Sapunor or (2) set the case for a disposition hearing in front of Judge Sapunor.  The minor also requested a stay on further proceedings in the juvenile court pending our resolution of the matter. We issued the requested stay that same day, excepting from the stay "the superior court's determination on the *Arbuckle* waiver."

On July 6, Judge Arguelles issued a written ruling in which he denied the minor's objection to him conducting the disposition hearing "because the minor did not have a reasonable expectation that the same judge who took his admission/plea would be the same judge who imposed the disposition."[3]  Judge Arguelles also acknowledged that his rejection of the proposed disposition that was part of the plea agreement would entitle the minor to withdraw his plea but noted that the stay ordered by this court precluded him from either offering the minor the right to do so or proceeding with disposition if the minor elected not to do so.

---

[3]    While the superior court's order of July 6, 2015, was not part of the record produced by the minor in support of his petition (because the order did not yet exist when the minor filed his petition), we take judicial notice of it on our own motion.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

9

DISCUSSION

As we noted at the outset of this opinion, the question in this case is whether the minor has a right under *Arbuckle* to insist that Judge Sapunor preside over his disposition hearing. In support of his writ petition, the minor argues that his case must be sent back to Judge Sapunor for disposition "because the record does not show he knowingly waived his right to enforce the implied term of his plea bargain . . . that he would be sentenced by the same judge who accepted his plea/admission." Of course, this assertion begs the question of whether the minor had such a right in the first place -- that is, whether it *was* an implied term of his plea agreement that Judge Sapunor would impose the disposition in the minor's case. If the minor never had an "*Arbuckle* right" to be sentenced by the same judge who accepted his negotiated plea,[4] then he had nothing to waive, knowingly or otherwise. Thus, the real question for us to resolve is not waiver, but whether the minor ever had an *Arbuckle* right. To answer that question, we first examine *Arbuckle* and many of the cases that have followed in its wake.

In *Arbuckle*, Judge Robert H. London accepted a negotiated plea of guilty from the defendant to a charge of assault with a deadly weapon in exchange for dismissal of two other charges and agreement that the judge would follow the sentencing recommendation in a diagnostic report from the Department of Corrections. (*People v. Arbuckle*, *supra*, 22 Cal.3d at pp. 752-753.) The report ultimately recommended prison, although a minority report recommended probation with maximum jail time. (*Id.* at p. 752.) Before

---

**4**    We refer to the minor being sentenced, knowing that is not the right term, only to avoid unnecessarily complicating the discussion in this case. *Arbuckle* applies equally to criminal proceedings and delinquency proceedings where wardship is premised on the minor's violation of a criminal law. The former cases involve defendants, pleas, and sentences; the latter cases involve minors, admissions, and dispositions. For ease of discussion, however, we will sometimes use the terms applicable to the former cases, although in doing so we intend to encompass the terms applicable to the latter cases as well.

10

the sentencing hearing, however, Judge London was transferred to another department. (*Id.* at p. 753.) When the case was called before Judge Raymond R. Roberts, the defendant objected to imposition of sentence by Judge Roberts and insisted that he was entitled to be sentenced by Judge London. (*Ibid.*) Judge Roberts disagreed and sentenced him to prison. (*Ibid.*)

On review, the Supreme Court agreed with the defendant "that the plea bargain herein was entered in expectation of and in reliance upon sentence being imposed by the same judge." (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) The court noted that its conclusion was "supported by the judge's repeated use of the personal pronoun when referring to sentencing in the proceeding in which the plea bargain was accepted."[5] (*Ibid.*) The court then continued as follows: "As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea." (*Id.* at pp. 756-757.) The court determined that "[b]ecause the defendant has been denied that aspect of his plea bargain, the sentence imposed by another judge cannot be allowed to stand," and defendant was "entitled to be sentenced by Judge London, or if internal court administrative practices render that impossible, then in the alternative defendant should be permitted to withdraw his plea." (*Id.* at p. 757.)

---

[5] Specifically, Judge London told the defendant, " 'I have agreed, as has your attorney, Mr. Kenner, that before I could send you to the State Prison, I would have to get that 90-day diagnostic study and I would follow the recommendation." (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756, fn. 4.)

As can be seen, the brief discussion in *Arbuckle* of the right to be sentenced by the judge who accepted a negotiated plea was somewhat confusing. First, the Supreme Court engaged in an individualized analysis of the case and determined that based on what Judge London said to the defendant at the plea hearing, the defendant entered into the plea agreement "in expectation of and in reliance upon sentence being imposed by the same judge." (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) Immediately thereafter, however, the Supreme Court appeared to announce a broad and general rule that "*whenever* a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge." (*Id.* at pp. 756-757, italics added.)

In the first six years that followed *Arbuckle*, the courts of appeal consistently applied the general rule stated in *Arbuckle*, eschewing any individualized analysis as to whether the defendant in a particular case had reason to believe based on the specific facts of the case that the judge who accepted the negotiated plea would be the one who imposed sentence. (See *In re Ray O.* (1979) 97 Cal.App.3d 136, 139-140 ["In the absence of clear waiver, whenever a juvenile enters a plea bargain before a judge he has the right to be sentenced by that same judge," fn. omitted]; *People v. DeJesus* (1980) 110 Cal.App.3d 413, 418 ["The court in *Arbuckle* held that the defendant is entitled to be sentenced by the judge who accepts the guilty plea pursuant to plea bargain"]; *People v. Pedregon* (1981) 115 Cal.App.3d 723, 725 [referring to "the *Arbuckle* court's finding of an implicit term in every plea bargain that the sentence will be imposed by the judge who accepts the plea"]; *In re Thomas S.* (1981) 124 Cal.App.3d 934, 937 ["*Arbuckle* held that an implicit term of a plea bargain is the trial judge who takes the plea will also be the sentencing judge"]; *People v. Rosaia* (1984) 157 Cal.App.3d 832, 837 [referring to "the rule that a defendant who pleads guilty has the right to be sentenced by the same judge who accepted the plea"].) This line of cases gave rise to the term "*Arbuckle* right" (*In re Thomas S.*, at p. 937) or sometimes, "*Arbuckle* rights" (*Rosaia*, at p. 838), which was

12

understood as the right of *every* defendant who enters a negotiated plea to be sentenced by the judge who accepted the plea.

The concept of an *Arbuckle* right, in turn, engendered two related concepts: an *Arbuckle* admonishment and an *Arbuckle* waiver. On the latter point (waiver), the appellate court in *Ray O.* observed early on that the right to be sentenced by the same judge who accepted the negotiated plea could be relinquished by "a clear waiver." (*In re Ray O.*, *supra*, 97 Cal.App.3d at pp. 139-140.) Two years later, the court in *Thomas S.* first employed the term "*Arbuckle* waiver" to describe such a relinquishment. (*In re Thomas S.*, *supra*, 124 Cal.App.3d at p. 937.) On the former point (admonishment), the court in *Thomas S.* also concluded that "a juvenile court should advise a minor of his *Arbuckle* right during the jurisdictional hearing or at the commencement of the dispositional hearing if another judge is presiding," although the court declined to "establish[] a rule for all juvenile cases which would require the *Arbuckle* admonishment to be given with the express waiver from the minor to be reflected on the record." (*In re Thomas S.*, at p. 940.)

Five years after *Arbuckle*, the California Supreme Court spoke for a second time on the issue in *In re Mark L.* (1983) 34 Cal.3d 171. In applying *Arbuckle* in *Mark L.*, the Supreme Court took the opposite course from that charted by the courts of appeal in *Ray O.* and its progeny. Specifically, the Supreme Court did not invoke the broad general rule from *Arbuckle* and instead looked to the record in the case before it to see whether the record "indicate[d] an actual assumption by the court and parties that the officer taking the plea would have final and exclusive dispositional authority." (*Mark L.*, at p. 177.) The Supreme Court found that it did because the commissioner "made repeated references to the dispositions 'the Court' could or might impose," which, construed in the context of the commissioner's "interchangeable use of the personal pronoun with the phrase 'the Court' implied that he and 'the Court' were one and the same." (*Id.* at pp. 173, 177.) The Supreme Court also noted that the commissioner had given the minor

13

an *Arbuckle* admonishment and that "considerable effort was expended to ensure that he, rather than some other judge or referee, would act at the dispositional phase." (*Ibid.*)

Notwithstanding the Supreme Court's individualized analysis of the record in *Mark L.*, rather than application of the general rule from *Arbuckle*, some courts of appeal continued to simply apply the general rule in the wake of *Mark L.* (E.g., *People v. Rosaia*, *supra*, 157 Cal.App.3d at p. 832.) In March of 1985, however, one court of appeal heeded and followed *Mark L.*'s individualized approach to the issue. (*In re James H.* (1985) 165 Cal.App.3d 911.) In *James H.*, the appellate court drew from both *Arbuckle* and *Mark L.* in determining that it is not "always an implied term of a plea bargain that the judge who accepts the admission or plea will impose the sentence"; instead, the record must be examined to determine whether it contains "the type of factors relied on in *Arbuckle* and *In re Mark L.* to support the assumption that the admission was entered in expectation of and reliance upon disposition being imposed by the same judge." (*James H.*, at pp. 919, 920.)

Two months after *James H.*, this court also applied the individualized approach from *Mark L.* in determining whether the defendant had a reasonable expectation that he would be sentenced by the same judge who accepted his negotiated plea. (*People v. Ruhl* (1985) 168 Cal.App.3d 311, 315.) Other courts, however, continued to follow *Ray O.* and its progeny, relying on the general rule from *Arbuckle* and eschewing any individualized analysis. (E.g., *People v. Poole* (1985) 168 Cal.App.3d 516, 521.) Still other courts *cited* the general rule but nonetheless *engaged in* an individualized analysis. (E.g., *People v. Santos* (1985) 171 Cal.App.3d 67, 70-71.)

In 1989, the Fifth Appellate District -- which was responsible for many of the decisions following the general rule from *Arbuckle* rather than an individualized analysis (including *Ray O.*, *DeJesus*, and *Rosaia*) -- broke ranks with its earlier line of cases and joined the line of appellate court authority represented by *James H.* and *Ruhl*. (*People v. Horn* (1989) 213 Cal.App.3d 701.) In *Horn*, the Fifth District specifically disapproved

14

its earlier decisions "to the extent they either hold or suggest the *Arbuckle* term is implied in all plea bargains" and instead concluded that *Arbuckle* applies only "to those cases where the record affirmatively supports a defendant's reasonable expectation the judge accepting his plea will also impose sentence." (*Id.* at pp. 707, 708.)

*Horn* appears to have been the final nail in the coffin for *Ray O.* and its progeny and the idea that *every* defendant who enters a negotiated plea has an *Arbuckle* right to be sentenced by the same judge who accepted the plea, as no published case since *Horn* has deviated from the individualized approach under which the court examines the record to determine what the defendant reasonably could have expected at the time the plea was entered. Still, old rules die hard, and broad statements of the general rule have continued to appear in cases occasionally since *Horn*. (E.g., *People v. Arata* (2007) 151 Cal.App.4th 778, 787 [asserting that *Arbuckle* "held where a judge accepts a plea bargain and retains sentencing discretion, there is an implied term of the bargain that sentence will be imposed by that judge"].) Such broad statements have also continued to appear, with much greater frequency, in the treatises, which often leave the distinct impression that the general rule from *Arbuckle* is still very much alive, despite the stake the Fifth District tried to drive into its heart more than a quarter of a century ago in *Horn*. (See, e.g., 2 Erwin et al., Cal. Criminal Defense Practice (2015) Arraignment & Pleas, § 42.44[1], pp. 42-154.8(5)-42-154.9 ["whenever a judge accepts a plea bargain and retains sentencing discretion, under the agreement, an implied term of the bargain is that sentence will be imposed by that judge"]; Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2015) Pronouncing Judgment, § 35.11, p. 1028 ["A defendant who pleads guilty has the right to be sentenced by the judge before whom the guilty plea was entered if that judge retained sentencing discretion under the agreement," italics omitted]; Levenson, Cal. Criminal Procedure (The Rutter Group 2014) Plea Bargaining, § 14:18, p. 14-20 ["When the plea agreement provides that the judge who accepts the plea retains sentencing discretion, that judge must sentence the defendant"]; Cal. Judges

15

Benchguides: Criminal Proceedings (CJER 2013) Felony Arraignment and Pleas, § 91.29, p. 91-26 ["When a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge"].)

Notwithstanding these vestiges of *Arbuckle*'s "general principle," it appears to us to have been settled law for more than 25 years that an *Arbuckle* right to be sentenced by the judge who accepted a negotiated plea arises not as a matter of general principle, but only when the specific facts of a given case show that the plea was given "in expectation of and in reliance upon sentence being imposed by the same judge." (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.)  Thus, in *James H.*, for example, the appellate court concluded the minor had no *Arbuckle* right because (1) "[i]n accepting the minor's admission . . . , the Los Angeles Superior Court judge neither used the personal pronoun in referring to the dispositional hearing, nor expended any effort to insure that he would act at the dispositional hearing; and (2) the "minor was forewarned a number of times that the San Bernardino court, not the Los Angeles court, would handle disposition of minor's case." (*In re James H.*, *supra*, 165 Cal.App.3d at p. 920.)  And in *Ruhl*, this court concluded the defendant had no *Arbuckle* right because (1) "[t]he detailed, written plea agreement expressly set forth all terms of the agreement" and "sentencing by Judge Keeley was not one of the agreed terms"; (2) "when Judge Keeley took defendant's plea, he gave no indication that he would be the sentencing judge"; and (3) "defendant Ruhl decided to plead guilty long before he ever got to superior court" and thus "the identity of the judge taking his plea clearly did not influence his decision." (*People v. Ruhl*, *supra*, 168 Cal.App.3d at pp. 315, 316.)

On the other hand, in *People v. Serrato* (1988) 201 Cal.App.3d 761, this court held the defendant *had* an *Arbuckle* right "because of the judge's use of the personal pronoun 'I' in accepting the plea." (*Id.* at p. 764.)  Similarly, in *People v. Adams* (1990) 224 Cal.App.3d 1540, the court concluded the defendant "did have an *Arbuckle* right"

16

because "[t]he judge at the change of plea hearing asked 'Do you understand that the maximum sentence I could impose in this case is up to eight years in state prison and $20,000 fine?' " and "[t]he clerk later suggested a date for sentencing in 'this department.' " (*Id.* at p. 1543.)

In light of the foregoing case law, we believe the question for us to answer in this case is whether the record shows that it was an express or implied term of the minor's plea agreement that Judge Sapunor would preside over his disposition hearing on his admission of the two probation violations, such that it can be said that the minor entered into the plea agreement "in expectation of and in reliance upon" disposition being imposed by Judge Sapunor. (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) Such circumstances are not shown in the record.

Before we address the minor's arguments, we pause to put to rest an idea the facts of this case may suggest. Because the plea agreement here was based on a *specific* disposition -- release from custody and transfer of the case to Nevada so the minor could live with his mother in Las Vegas -- it might be argued that *Arbuckle* does not apply at all, because *Arbuckle* applies only when the court "retains sentencing discretion under the [plea] agreement." (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) We have two responses to that argument. First, that language comes from the general principle stated in *Arbuckle*, and as we have explained above, that general principle long ago ceased to be applied by the California Supreme Court (see *Mark L.*) or by the courts of appeal in preference to the individualized approach, which asks whether the record affirmatively supports the conclusion that the defendant entered into the negotiated plea in expectation and reliance upon sentence being imposed by the judge who accepted the plea. Second, the fact is that the court *always* retains sentencing discretion in the event of a negotiated plea, because if the court decides at sentencing that it does not want to impose the agreed-upon sentence, the court can withdraw its approval of the plea, in which case the defendant must be permitted to withdraw the plea itself. This is true both in criminal

17

cases (see Pen. Code, § 1192.5)**6** and in juvenile delinquency cases (see *In re Ricardo C.* (2013) 220 Cal.App.4th 688, 698-699). Accordingly, the fact that this case involved an agreed-upon disposition has no effect on the application of *Arbuckle* here.

With that observation out of the way, we turn to the minor's arguments. In asserting that he was entitled to have disposition imposed by Judge Sapunor, the minor argues that he "certainly was under the belief that the dispositional orders of his negotiated plea would be carried out at his next appearance in that the court that took his plea/admission [Judge Sapunor] told the parties, when they realized some logistical problems, 'Maybe we ought to put this out for a week to make sure that the disposition goes as planned.' " (Bold text omitted.) This argument is unpersuasive for two reasons. First, to the extent the minor is arguing that he had an *Arbuckle* right because he had a reasonable expectation that he would receive the promised disposition, we disagree. A defendant's expectation that he will receive an agreed-upon sentence is *not* the same expectation with which *Arbuckle* is concerned: the expectation of being sentenced by the same judge who accepted the negotiated plea.

Under *Arbuckle*, when a defendant is denied the benefit of a term of his plea agreement that he will be sentenced by the judge who accepted his plea, the defendant is entitled to specific performance of that term -- that is, he is entitled to be sentenced by that judge -- unless specific performance is impossible. On the other hand, as we have

---

**6**     "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in that case, the defendant shall be permitted to withdraw his or her plea if he or she desires to do so." (Pen. Code, § 1192.5.)

seen, when a defendant is denied a promised disposition, the defendant is *not* entitled to specific performance of that promise; instead, he is only entitled to withdraw his plea. Thus, the two issues are simply not the same. What that means here is that even though the minor had a reasonable expectation that he would receive the agreed-upon disposition, *that* expectation did not entitle him to have Judge Sapunor preside over his disposition hearing. To establish that he is entitled to the same judge at sentencing, the minor has to show that it was agreed -- either expressly or implicitly -- that Judge Sapunor would sentence him.

Second, to the extent the minor may be suggesting that Judge Sapunor's use of the word "we" in the statement, "[m]aybe we ought to put this out for a week to make sure that the disposition goes as planned," implied that Judge Sapunor would preside over the disposition hearing because Judge Sapunor would be one of those who would "make sure that the disposition goes as planned," that argument is also unavailing. As we have explained, expectations that the disposition would go as planned are different from expectations that the same judge would preside over the disposition. Here, the use of the word "we" evidences the former but not the latter. The plea agreement -- as succinctly summarized by the minor's attorney at the very outset of the hearing on May 28 -- included *nothing* that either explicitly or implicitly suggested that Judge Sapunor would preside over the disposition hearing on June 4.

Examining the remaining arguments in the minor's petition, we discern that they are all variations on the theme we have discussed already: namely, that the minor reasonably expected that he would receive the promised disposition. Thus, the minor argues as follows:

1) "Although Judge Sapunor did not use the personal pronoun 'I' when he took [the minor]'s admission, it was clear he intended that the negotiated plea and disposition be carried out";

19

2) "It is clear in this case that the parties assumed that disposition would be carried out as anticipated by Judge Sapunor in that it was the only possible disposition contemplated by the court at the time of the negotiated settlement and beginning of the dispositional hearing on May 28, 2015"; and

3) "Judge Sapunor certainly anticipated the plea/admission agreement and disposition would be carried out as agreed."

As we have explained already, however, the fact that an agreed-upon disposition was part of the plea agreement does *not* give rise to an *Arbuckle* right to be sentenced by the same judge who accepted the plea. For the minor to have had an *Arbuckle* right, there must be something in the record that affirmatively supports the conclusion that he entered into the plea agreement "in expectation of and in reliance upon" disposition being imposed by Judge Sapunor. (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) Saying that the parties and Judge Sapunor expected the minor to receive the agreed-upon disposition is *not* the same as saying they expected Judge Sapunor to impose that disposition, let alone the same as saying that the minor entered into the plea agreement *based on* the understanding that Judge Sapunor would preside at the disposition hearing.

Nothing in the minor's traverse alters our conclusion that he has not shown any basis for finding he had an *Arbuckle* right to have disposition imposed by Judge Sapunor. In the traverse, he argues that he reasonably expected Judge Sapunor to conduct the disposition hearing because of "the uniqueness of the disposition itself." Frankly, however, it does not matter that "this was going to be a transfer out to another jurisdiction after an agreement between two states, California and Nevada, *based on* an interstate compact," (italics added) or that "[t]he details of the agreement had all been worked out, except [the minor]'s travel arrangements," or that "the disposition would have been completed on May 28, 2015" "[b]ut for the in-court probation officer's request for [the minor]'s grandmother to bring [the minor]'s travel documents to court to insure that the interstate compact not have to be reconstituted." None of these factors bears on the

20

question of whether the minor entered into the plea agreement *based on* the reasonable belief that Judge Sapunor would preside over the disposition hearing.

To the extent the minor relies on various statements Judge Sapunor made beginning with his statement, "[m]aybe we ought to put this out for a week to make sure that the disposition goes as planned," we have answered that argument already above. Nothing Judge Sapunor said reasonably tends to show that the minor entered into the plea agreement based on the belief that Judge Sapunor would impose the disposition.

To the extent the minor argues that "Judge Sapunor's participation in the settlement of the minor's case in this instance was certainly the most 'significant factor' in [the minor's] decision to admit to the violation of probation and to resolve his case," (bold text omitted) we have two responses. First, the truth of that assertion is not shown as a matter of record; rather, the minor asks us to speculate based on "the history Judge Arguelles had with [the minor]" that the presence of Judge Sapunor at the hearing on May 28 was a significant motivating factor in the minor deciding to enter into a plea agreement. Second, even if we could say that Judge Sapunor's presence at the settlement conference was a significant factor in the minor deciding to enter a negotiated plea, that still is not the same as saying that the minor entered into the plea agreement "in expectation of and in reliance upon" disposition being imposed by Judge Sapunor. (*People v. Arbuckle*, *supra*, 22 Cal.3d at p. 756.) There has to be something in the record to show that the minor entered into the plea agreement at least in part because he expected and relied on Judge Sapunor being the judge who would impose disposition. As we have explained, the minor has not identified any such factor.

To the extent the minor argues that our refusal to find an *Arbuckle* right here "will have a significant chilling effect on future plea negotiations in this jurisdiction, simply because counsel and minors will not know to what degree of certainty they can rely on the negotiated settlement[s]" approved by Judge Sapunor and "other regularly scheduled visiting judges," we have three responses. First, we are not aware of any provision of law

21

that would allow us to recognize the existence of an *Arbuckle* right just because refusing to do so could be deemed to have negative consequences in other cases. The *Arbuckle* right does not come and go to suit various perceived policy objectives; it is a contractual right that arises, or does not arise, in a given case based on the specific facts of that case, which will show, or not show, that the defendant entered into a plea agreement in expectation of and reliance upon sentence being imposed by the same judge who accepted the plea. That predicate factual basis for the right simply has not been shown to exist here.

Second, to the extent the minor's argument rests on the lack of certainty as to whether an agreed-upon disposition will actually be imposed, such uncertainty is inherent in the law that provides that a promised disposition is *never* specifically enforceable, and the court can always decide to impose a different disposition, provided the defendant is given the opportunity to withdraw his or her plea if the court exercises that option. (See Pen. Code, § 1192.5; *In re: Ricardo C.*, *supra*, 220 Cal.App.4th at pp. 698-699.) Whether we find an *Arbuckle* right in this case cannot affect, in any manner, the inherent uncertainty in promised dispositions.

Perhaps the best way of fostering certainty and settled expectations in light of these concerns would be to encourage the use of an *Arbuckle* request. That is, a defendant considering entering into a plea agreement who decides that he or she wants to be sentenced by the same judge to whom the plea agreement is being presented for approval can request that the prosecution agree to, and that the court approve, the inclusion of an *Arbuckle* right in the agreement. Making the *Arbuckle* issue explicit in the course of plea negotiations by expressly requesting an *Arbuckle* term in the plea agreement will necessarily eliminate the uncertainty that comes with trying to discern from an often vague record whether the defendant entered into the plea agreement in expectation of and reliance upon sentence being imposed by the judge who accepted the plea, such that the right to be sentenced by that judge is implicit in the agreement.

22

In the meantime, the minor has failed to persuade us that he entered into the plea agreement here in expectation of and reliance upon Judge Sapunor presiding over the disposition hearing. Thus, the right to have Judge Sapunor impose disposition was neither an express nor an implicit term of his plea agreement. Accordingly, the minor is not entitled to the relief he seeks in this proceeding.

## DISPOSITION

The petition for writ of mandate is denied, and the stay issued by this court on June 25, 2015, is vacated upon finality of this opinion.

 

 

 

_____

Robie, Acting P.J.

We concur:

 

 

_____

Mauro, J.

 

 

_____

Murray, J.