[No. B164433. Second Dist., Div. Three. Jan. 30, 2004.]

In re KAREN A., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v.
KAREN A., Defendant and Appellant.

**COUNSEL**

Cheryl Barnes Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jeffrey B. Kahan and Louis W. Karlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—Karen A., a minor, appeals from the order of wardship (Welf. & Inst. Code, § 602) entered following a determination that she committed assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)) with personal infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)). She was ordered placed home on probation. In this case, we conclude the juvenile court did not err by failing to identify losses or specify their amount in the court's restitution order.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*In re Dennis B.* (1976) 18 Cal.3d 687, 697 [135 Cal.Rptr. 82, 557 P.2d 514]), the evidence, the sufficiency of which is undisputed, established that on March 15, 2002, appellant and a confederate initiated a fight with Roza M., during which the confederate hit Rosa M.'s head against the ground, appellant and the confederate hit and kicked Roza M., and her nose was broken.

## CONTENTION

Appellant contends "[t]he juvenile court erred by failing to identify and specify the amount of loss in the restitution order."

## DISCUSSION

*The Juvenile Court Did Not Err By Failing To Identify Losses Or Specify Their Amount In The Restitution Order.*

### 1. *Pertinent Facts.*

The petition filed May 21, 2002, alleged that appellant committed felonious assault (Pen. Code, § 245, subd. (a)(1)) with personal infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)). The June 2002 probation report reflects the following. During the above altercation, appellant kicked Roza M. in her stomach and on her head. Roza M. "sustained a broken nose and bruising to her left face cheek and was going to require surgery to replace [Roza M.'s] broken nose." Appellant was aware that if she were found to have committed the above offense, she would have to pay restitution. Roza M.'s "family was told . . . that they would receive restitution information after the hearing and that if they filled out and sent their bills, attempts will be made to get them paid." Roza M.'s family did not have health insurance.

At the October 31, 2002 adjudication, Roza M. testified "I can't breathe with my nose that way, and at night I keep waking up because I can't breathe. And my nose is like broken now and its deformed . . . ." Roza M. was frequently afraid. Roza M.'s medical records were admitted in evidence. After further testimony, the court, on November 1, 2002, sustained the petition.

At the November 1, 2002 disposition, the prosecutor observed "[t]here is a lot of restitution in this case . . . ." The court indicated it would impose restitution. The court declared appellant a ward of the court and ordered her placed home on probation on the condition, inter alia, that she "[m]ake restitution on all related losses." The November 1, 2002 minute order reflects, "[m]ake reparation on all related losses as determined by the Probation Officer . . . ."[1] Appellant read and understood her probation conditions.

2. *Analysis.*

Appellant claims the trial court erred by failing to identify the losses to which the restitution order pertained, failing to specify the amount of restitution due, and delegating these tasks to the probation officer. We disagree.

Welfare and Institutions Code section 730.6, governs restitution in juvenile cases.[2] Subdivision (h) thereof provides, inter alia, "[i]f the amount of loss

---

[1] Appellant asserts, "[t]he juvenile court . . . ordered appellant to make reparation for all related losses as determined by the probation officer as a condition of her probation."

[2] At the time of the present offense, that section stated, in relevant part, "(a)(1) It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor. [¶] (2) Upon a minor being found to be a person described in Section 602, . . . the court shall order the minor to pay, . . . [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h). [¶] . . . [¶] (h) Restitution ordered pursuant to subparagraph (B) of paragraph (2) of subdivision (a) shall be imposed in the amount of the losses, as determined. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment or probation. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . A restitution order pursuant to subparagraph (B) of paragraph (2) of subdivision (a), to the extent possible, shall identify each victim, unless the court for good cause finds that the order should not identify a victim or victims, and the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (2) Medical expenses. [¶] . . . [¶] A minor shall have the right to a hearing before a judge to dispute the determination of the amount of restitution. . . . When the amount of victim restitution is not known at the time of disposition, the court order shall identify the victim or victims, unless the court finds for good cause that the order should not identify a victim or victims, and state that the amount of restitution for each victim is to be determined."

cannot be ascertained at the time of sentencing, the restitution order shall include a provision that *the amount shall be determined at the direction of the court* at any time during the term of the commitment or probation."[3] (Italics added.) Respondent relies, inter alia, on this provision to dispute appellant's claim.

■ The pertinent principles governing statutory construction are settled.[4] Applying those principles here, we note that the above italicized language of Welfare and Institutions Code section 730.6, subdivision (h), provides that "the amount shall be determined at the direction of the court . . . ." Neither this language, nor any other in the section, expressly states that the court is authorized to delegate to the probation officer the tasks of identifying losses and specifying the amount of restitution due. On the other hand, the fact that the Legislature did not simply state that "the amount shall be determined by the court" is consistent with a legislative intent to authorize juvenile courts to delegate restitution determinations to probation officers.

In any event, the language "the amount shall be determined at the direction of the court" is ambiguous because it is unclear what is "direct[ed]," that

---

[3] Appellant claims the amount of loss could have been ascertained at time of sentencing, therefore the above quoted language from Welfare and Institutions Code section 730.6, subdivision (h), did not apply. However, a court is presumed to have followed applicable law (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517–1518 [77 Cal.Rptr.2d 492]; Evid. Code, § 664), and the juvenile court's restitution order, discussed *ante*, implied a finding that the amount of loss could not have been ascertained at time of sentencing. Substantial evidence supported that finding. The probation report indicated Roza M. "*was going* to require surgery to replace [Roza M.'s] broken nose[,]" (italics added) indicating future surgery would be required. Her family did not have health insurance. At the time of adjudication, Roza M. testified she could not breathe with her nose the way it was, and it was broken and deformed. The court sustained a petition against appellant alleging that she personally inflicted great bodily injury against Roza M. We note the prosecutor observed there was "a lot of restitution" in this case. The juvenile court reasonably could have concluded that appellant's losses, including medical expenses, would continue even after disposition, therefore, "the amount of loss [could not have been] ascertained at the time of sentencing" for purposes of Welfare and Institutions Code section 730.6, subdivision (h).

[4] In *People v. Coronado* (1995) 12 Cal.4th 145 [48 Cal.Rptr.2d 77, 906 P.2d 1232], our Supreme Court stated, " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado, supra*, 12 Cal.4th at p. 151.)

is, whether the court is "directi[ng]" a *probation officer*, or a *determination process* without a probation officer.

The legislative history of the version of Welfare and Institutions Code section 730.6, in effect at the time of the present offense demonstrates, as shown below, that the order of the juvenile court here was proper. Assembly Bill No. 2491 (1999–2000 Reg. Sess.) (Assem. Bill 2491) was introduced in the Assembly in February 2000. (Assem. Bill 2491 as introduced Feb. 24, 2000; 2 Assem. Final Hist. (1999–2000 Reg. Sess.) p. 1813.)[5]

A March 27, 2000 amendment to Assem. Bill 2491, proposed to amend various statutes and, as pertinent here, proposed to add to Welfare and Institutions Code section 730.6 , subdivision (h), the language "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court." (Assem. Bill 2491, as amended Mar. 27, 2000, italics omitted.)

An April 11, 2000 amendment to Assem. Bill 2491 proposed instead, as pertinent here, to add to Welfare and Institutions Code section 730.6, subdivision (h), the language "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court *at any time during the term of the commitment or probation.*" (Assem. Bill 2491, as amended Apr. 11, 2000.)[6] (As discussed *ante*, this sentence's language remained unchanged despite further amendments to Assem. Bill 2491; was added to Welf. & Inst. Code § 730.6, subd. (h), as a result of Assem. Bill 2491's later passage; and was in effect at the time of the present offense; see fn. 2, *ante*.)

An analysis by the Senate Committee On Public Safety prepared for a June 13, 2000 hearing, and pertaining to Assem. Bill 2491, as amended May 26, 2000, states, inter alia, that "This bill does the following: [¶] . . . [¶] Clarifies that *the courts may* order restitution to be paid directly to the Restitution Fund and *direct probation departments to determine the amounts of restitution orders payable to both the victim* and to the Fund and specifies reference to the [Victim Of Crime] Program in the Welfare & Institutions Code section authorizing the courts to order restitution to be paid directly to the Fund." (Sen. Com. on Public Safety, Analysis of Assem. Bill 2491, as amended May 26, 2000, pp. 4–5, italics added.)[7] This language

[5] As introduced, Assem. Bill 2491 proposed only to amend Government Code section 13961.1, which is not pertinent to this appeal.

[6] Assem. Bill 2491 was later amended in respects not pertinent to this appeal.

[7] The additions to Welfare and Institutions Code section 730.6, subdivision (h) proposed in the above discussed March 27, 2000 and April 11, 2000 amendments to Assem. Bill 2491 were contained in section 12 of each amendment. However, an August 25, 2000 amendment to the

is repeated verbatim in an analysis by the Senate Rules Committee pertaining to Assem. Bill 2491 as amended August 25, 2000. (Sen. Rules Com., Analysis of Assem. Bill 2491, as amended Aug. 25, 2000, pp. 3–4.)

In sum, Assem. Bill 2491 as amended April 11, 2000, proposed to add to Welfare and Institutions Code section 730.6, subdivision (h), the language, "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment or probation[,]" and the Senate Committee On Public Safety analysis of that bill indicated that the bill clarified that courts could "direct probation departments to determine" the amounts of restitution orders payable to the victim. Although said senate analysis does not expressly state that it was referring to that proposed addition (as distinct from other proposed changes to Welfare and Institutions Code section 730.6, subdivision (h), and other statutes, contemplated by the bill) our review of that senate analysis and the amendments to Assem. Bill 2491 pertinent at the time that senate analysis was written compel us to conclude that said analysis pertained to said proposed addition.[8] We note in this regard that the words "direct[ing]" and "determin[ation]" are found both in that proposed addition, and in said senate analysis.

In 2000, Welfare and Institutions Code section 730.6, subdivision (h), was amended by section 12.5 of Assem. Bill 2491 to include, inter alia, the sentence quoted in the previous paragraph. See fn. 2, *ante*.)

bill contained section 12 and a new section 12.5, each containing a slightly different proposed version of Welfare and Institutions Code section 730.6. (Assem. Bill 2491, as amended Aug. 25, 2000.) In pertinent part, section 12.5 (the version ultimately enacted), unlike section 12, contained certain provisions pertaining to identification of victims and loss amounts. Specifically, section 12.5, proposed, inter alia, to add to Welfare and Institutions Code section 730.6, subdivision (h), the language "shall identify each victim, unless the court for good cause finds that the order should not identify a victim or victims, and the amount of each victim's loss to which it pertains," and the language "When the amount of victim restitution is not known at the time of disposition, the court order shall identify the victim or victims, unless the court finds for good cause that the order should not identify a victim or victims, and state that the amount of restitution for each victim is to be determined[,]" (*italics omitted*) with the result that that subdivision would read as it ultimately did at the time of the present offense. (See fn. 2, *ante*.)

[8] Given the content of the provisions pertaining to identification of victims and loss amounts contained in section 12.5 of the August 25, 2000 amendments to Assem. Bill 2491 (see fn. 7, *ante*), the fact that, *after* those amendments, the analysis of the Senate Committee On Public Safety was, as previously discussed, *adopted* verbatim in the analysis of the Senate Rules Committee suggests that that clarifying analysis could apply to explain the purpose of said provisions as well. That fact would not alter the fact that the clarifying analysis must have applied to the sentence which the April 11, 2000 amendment to Assem. Bill 2491 proposed to add, and which we have quoted in the text above.

■ In light of the legislative history of the 2000 version of Welfare and Institutions Code section 730.6, subdivision (h), in effect at the time of the present offense, we conclude the juvenile court here had authority to direct the probation officer to determine the amount of restitution orders payable to Roza M. Accordingly, the court did not err by ordering as a condition of appellant's probation that she "[m]ake reparation on all related losses as determined by the Probation Officer" and did not err by failing, at time of disposition, to identify the losses to which the restitution order pertained, or to specify the amount of restitution due.[9] None of the cases cited by appellant, or her argument, compels a contrary conclusion.

## DISPOSITION

The order of wardship is affirmed.

Klein, P. J., and Aldrich, J., concurred.

---

[9] Nothing in the record indicates that, in the present case, a probation officer has made the restitution determination called for by the juvenile court's order or, therefore, that there is any such determination to dispute. We note that if appellant disputes a later restitution determination by a probation officer, Welfare and Institutions Code section 730.6, subdivision (h), expressly provides that "[a] minor shall have the right to a hearing before a judge to dispute the determination of the amount of restitution." We also note that this provision is consistent with our conclusion that the delegation in the present case was proper.