Filed 3/9/17

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re CRISTIAN S., a Person Coming Under the Juvenile Court Law. | H043104<br>(Santa Clara County<br> Super. Ct. No. 313JV40341A) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRISTIAN S.,<br><br>    Defendant and Appellant. | |

Pursuant to a negotiated agreement in this Welfare and Institutions Code section 602[1] proceeding, the minor Cristian S. admitted one count of conduct that if committed by an adult would constitute lewd or lascivious conduct on a child under the age of 14 (Pen. Code, § 288, subd. (a)), and two other counts were dismissed. The same judge, the Honorable Margaret Johnson, handled both the jurisdiction and disposition hearings. The amount of victim restitution could not be determined at the disposition hearing and the parties appeared several times thereafter for "restitution setting." The case was ultimately set for a contested hearing on victim restitution six months after the disposition hearing. On the day of the contested restitution hearing, the minor's counsel

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV. of the Discussion.

[1] All undesignated statutory references are to the Welfare and Institutions Code.

made a motion to continue the hearing because Judge Johnson was away at a judicial training conference. The visiting judge who had been assigned the restitution hearing denied the continuance request, conducted the hearing, and ordered the minor to pay $12,501.39 in victim restitution.

On appeal, the minor argues the juvenile court violated his rights under *People v. Arbuckle* (1978) 22 Cal.3d 749 (*Arbuckle*) when it denied his request to have Judge Johnson preside over the restitution hearing. We conclude in the published portion of this opinion that the *Arbuckle* right does not apply to victim restitution hearings in juvenile court. We also hold that even if *Arbuckle* applied, any error was harmless because the minor received a fair hearing on the restitution issue, and the minor did not meet his evidentiary burden of demonstrating that the amounts ordered as victim restitution were excessive. In the unpublished portion of this opinion, we reject the minor's arguments that the court abused its discretion in ordering restitution for the male victim's bedroom furniture, clothing, and for costs associated with a therapy dog. Accordingly, we will affirm the restitution order.

### FACTS

In the fall of 2013, the minor was 13 years old. At that time, the minor's neighbor (Victims' Mother) occasionally had the minor watch her four-year-old son (sometimes Male Victim) while Victims' Mother picked up her seven-year-old daughter (sometimes Female Victim) from school. Victims' Mother left her son with the minor on October 2, 2013. She did not lock her front door when she left.

When Victims' Mother returned, her front door was locked. She knocked several times. When the minor opened the door, Victims' Mother noticed he was very sweaty. The minor said they had been playing hide and seek and her house was very warm. Victims' Mother noticed her son's shirt was tucked into his underwear and "his pants

2

were not straight." She had never before seen him tuck his shirt in this way. When the minor asked if the boys could continue playing, Victims' Mother sent him home.

Victims' Mother went into her son's room and "had a feeling something wrong had occurred." She asked her son what happened and he said the minor had touched his anus with his "wee wee," meaning the minor's penis. Later that evening, Female Victim told her mother she had previously "seen and heard [the minor] ask [Male Victim] to touch his 'wee wee.'" Female Victim also said the minor had also asked "her to touch his 'wee wee' on various occasions" and that the minor had touched her vagina.

Victims' Mother asked the minor to come to her house. She told him she had a teddy bear with a camera in her children's bedroom that had recorded everything, but wanted to hear from him. She said if he told her the truth, she would not tell his parents. The minor told Victims' Mother he put his penis between Male Victim's legs, admitted he had touched Female Victim, and said he had been "'touching them for a couple of weeks.'" Victims' Mother then asked the minor's parents to come over and the minor admitted in front of his parents that he had touched both victims in a sexual way.

The following day, Victims' Mother took her children to Santa Clara Valley Medical Center for a medical examination and reported that they had been molested by the minor. Later that day, the police interviewed both victims. Female Victim told the officer the minor "had touched her vagina over her clothing once and about 4 times underneath her clothing skin to skin." She said she saw the minor touch Male Victim's penis once. Once, through her bedroom window, she saw the minor, who was sitting on her bed, tell Male Victim to touch the minor's penis. Female Victim reported that the minor had "told her that her mother would go to jail if she told on him." The minor also said he would get in trouble if she told anyone. Male Victim said the minor touched his penis and sodomized him (the officer's words) and that it occurred more than once. Victims' Mother reported that three or four weeks prior to October 2, Male Victim (who

3

was potty-trained) began having accidents, had lost his appetite, and had lost a lot of weight.

The minor was detained on October 4, 2013. He was released from custody to his parents on the Community Release Program the following day. Since the minor has two younger siblings, the probation department and his parents arranged for him to live with his aunt.

## PROCEDURAL HISTORY

### I. Wardship Petition & Proceedings Regarding Competency

The prosecution filed a juvenile wardship petition pursuant to section 602, which alleged conduct that if committed by an adult would constitute two felony counts of lewd or lascivious conduct on a child under the age of 14 (Pen. Code, § 288, subd. (a)): one count for each victim.

At the detention hearing in October 2013, the court found that the minor was a person described by section 602, continued him on the Community Release Program in his aunt's home, and ordered no contact with the victims. The court granted the minor's counsel's request for a psychological evaluation to assist the minor's counsel in determining whether to enter a plea based on insanity or present a defense based on the minor's mental or emotional condition (Evid. Code, § 1017).

In November 2013, the prosecution filed an amended petition (§ 602), which retained the original counts and added one count of sodomy by force on a child under the age of 14 (Pen. Code, § 288, subd. (c)(2)(B)).[2] After the minor's counsel declared a doubt as to the minor's competency (Pen. Code, § 1368), the juvenile court suspended

---

[2] Although the minor admitted he had touched Male Victim's penis and Female Victim's vagina, he denied sodomizing Male Victim.

4

proceedings and ordered a psychological evaluation to address competency. In March 2014, Judge Johnson took over the case. In May 2014, after two psychologists opined that the minor was incompetent, Judge Johnson found the minor incompetent, but restorable, and referred him to the County's competency restoration program.

Between May 2014 and February 2015, Judge Johnson held 14 hearings to review the minor's progress in the competency restoration program and the Community Release Program. After living with his aunt for 10 months and following the development of a safety plan, the court authorized the minor to return to his parents' home on the Community Release Program in August 2014. By that time, the minor's family no longer lived next door to the victims. In February 2015, Judge Johnson found the minor had been restored to competency and reinstated juvenile court proceedings.

## II. *Jurisdiction and Disposition*

The parties resolved the case at a jurisdiction hearing on April 6, 2015. The prosecution amended count 1 of the petition (forcible lewd or lascivious act upon children under the age of 14) to add the names of both victims and asked that the remaining counts be dismissed. The minor admitted count 1. Judge Johnson accepted the admission, sustained the petition as to count 1, found that the minor was described by section 602, and dismissed counts 2 and 3. The maximum custody time is 10 years. The court ordered a psychological evaluation for disposition to address risk assessment and the minor's treatment needs. The psychologist concluded the minor's risk for sexual re-offense was low and recommended outpatient sex offender therapy.

At the disposition hearing in May 2015, the probation officer recommended probation. The minor's participation in the Community Release Program for almost 20 months had been exemplary: he reported to probation as required, there were no discipline problems at home or at school, and each of his chemical tests was negative.

5

The minor had been receiving psychotherapy. The probation officer recommended that the safety plan remain in place while the minor is on probation, that the minor continue his psychotherapy, and that the minor also receive outpatient sex offender treatment. The prosecutor read a victim impact statement written by Female Victim, and Victims' Mother addressed the court.

Judge Johnson placed the minor on probation with terms and conditions, including 45 additional days on the Community Release Program and ordered the sex offender therapy. She also ordered victim restitution, with the amount to be determined at a future hearing.

## III.    *Victim Restitution*

### A. Restitution Claim and Restitution Setting Hearings

In August 2015, the probation officer submitted a report to the court, which stated that the victims' parents sought $23,196.39 in victim restitution for the following: (1) $4,655.00 in lost wages for the victims' father; (2) $13,800 for the rental value of Male Victim's unoccupied bedroom after the molestations; (3) $2,190.45 to replace Male Victim's bedroom furniture, décor and some of his clothing; and (4) $2,550.94 for a therapy dog. The claim did not include the cost of the victims' medical or therapy appointments.

At a restitution setting hearing in August 2015, the victims' parents submitted a document in Spanish requesting approximately $2,000 in expenses. It was not clear whether these were duplicative of or in addition to amounts previously claimed. Judge Johnson continued the restitution setting hearing to clarify the claim and for the parties to explore resolution of the restitution claim. The attorneys appeared six times between September 8 and November 30, 2015 for "restitution setting" to discuss the restitution claim and readiness to proceed with a contested hearing on restitution. On November 3,

Judge Johnson set the matter for a contested restitution hearing on the afternoon of December 3, 2015.

### B. Motion to Continue Restitution Hearing

After she took over the case in March 2014, Judge Johnson presided over every hearing, except for the restitution setting hearing on September 8, 2015. On November 30, 2015, the attorneys appeared for a readiness conference regarding the contested restitution hearing. We do not have a reporter's transcript of that hearing, but the minute order supports the conclusion that the attorneys declared they were ready to proceed, since the contested hearing remained on calendar for December 3. The next day, the minor's counsel asked the clerk to place the matter on calendar for the morning of December 3 to request a continuance.

A retired visiting judge, the Honorable Leslie Nichols, heard the motion to continue on December 3. The minor's counsel stated, "The reason is simply that . . . Judge Johnson is familiar with this minor, with the case, with the history of the case. The victim has been here on several occasions and the judge has gotten an opportunity to know the victim because she has spoken out in court before. [¶] And that's my only reason, your Honor. I think it would be in the best interest of the minor if we leave it before Judge Johnson."[3] The minor's counsel did not mention *Arbuckle*.

The prosecutor objected to a continuance, arguing that the victims' parents were prepared to come to court that afternoon and had taken time off work to do so. She said a volunteer attorney in the district attorney's office would be handling the hearing, that the volunteer attorney had prepared for the hearing and would be leaving the district

---

[3] By "victim," we understand the minor's counsel to mean Victims' Mother. Although the record is not entirely clear, by our count, Victim's Mother appeared before the court 13 times before the restitution hearing. The minor victims also appeared in court on several occasions.

7

attorney's office at the end of the week. The prosecutor argued that if the court granted a continuance, another attorney would have to prepare for the hearing, and the victims' parents would have to take additional time off work. She asserted: "This is a restitution matter. It's not sentencing" and argued Judge Johnson "certainly set the case in contemplation that another judge might hear it. If she found it necessary to preside herself, she would have set the case on a day that she is here."

Judge Nichols denied the motion to continue. He explained that as a visiting judge, it is his practice to ask the court to leave a note on the file if there is a special problem or the file needs special attention. He stated he was there "to work," and there was no direction from the court to "do anything other than the work regularly assigned. So balancing all of these factors, the hardship, taking another day coming to court, it's hard to justify a continuance . . . ."

## C. Restitution Hearing and Order

At the restitution hearing that afternoon, Judge Nichols explained that Judge Johnson was away at a judicial training program. He said he denied the motion to continue "because I'm here to work." He explained that he had asked Judge Johnson to identify any cases that required special consideration and had not received a response. He said this "suggested that I shouldn't do anything other than hear the cases regularly assigned . . . . For that reason and also because witnesses had been notified here today, I felt it best to go forward."

The victims' parents testified at the hearing. The minor did not present any evidence. By the time of the hearing, the victims' restitution claim had increased to $26,301.39. The additional $3,105 claimed included $2,983 for costs related to taking the victims to therapy and medical appointments (gasoline and the children's meals) and $122 for two more months of veterinary insurance for the therapy dog.

8

Judge Nichols denied the $13,800 claim for the rental value of the unoccupied bedroom, awarded the other items claimed, and ordered the minor to pay $12,501.39 in victim restitution.

**DISCUSSION**

### I. *General Principles Regarding Victim Restitution*

"Enacted in 1982, Proposition 8, the 'Victims' Bill of Rights,' amended the California Constitution to provide that 'all persons who suffer losses' resulting from crime are entitled to 'restitution from the persons convicted of the crimes causing the losses.' (Cal. Const., art. I, § 28, subd. (b)(13)(A).) In 1983, the Legislature enacted Penal Code section 1202.4, which requires a full victim restitution order in criminal cases for every determined economic loss unless there are compelling and extraordinary reasons not to do so. (Pen. Code, § 1202.4, subd. (f).) In 1994, the Legislature enacted section 730.6 to provide 'parallel restitutionary requirements for juvenile offenders.' [Citation.]" (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304-305 (*Luis M.*).)

The purposes of an order for victim restitution in delinquency cases are threefold: to make the victim whole by compensating the victim for economic losses, to rehabilitate the minor, and to deter future delinquent behavior. (*Luis M.*, *supra*, 59 Cal.4th at p. 305; *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017 (*Anthony M.*).)

"[A] victim . . . who incurs an economic loss as a result of the minor's conduct shall receive restitution directly from the minor." (§ 730.6, subd. (a)(1).) As relevant here, section 730.6 provides: "[T]he court shall order the minor to pay, in addition to any other penalty provided or imposed under the law … [¶] … [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h)." (§ 730.6, subd. (a)(2)(B).) Subdivision (h)(1) provides in part that victim restitution "shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution unless it finds

9

compelling and extraordinary reasons for not doing so, and states them on the record. . . .
A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim
or victims for all determined economic losses incurred as the result of the minor's
conduct for which the minor was found to be a person described in Section 602, including
all of the following:  [¶] (A) Full or partial payment for the value of stolen or damaged
property.  The value of stolen or damaged property shall be the replacement cost of like
property, or the actual cost of repairing the property when repair is possible.  [¶]
(B) Medical expenses.  [¶]  (C) Wages or profits lost due to injury incurred by the victim,
and if the victim is a minor, wages or profits lost by the minor's parent, parents, . . . ,
while caring for the injured minor.  . . . .  [¶]  (D) Wages or profits lost by the victim, and
if the victim is a minor, wages or profits lost by the minor's parent, parents, . . . , due to
time spent as a witness or in assisting the police or prosecution.  . . . ." (§ 730.6, subd.
(h)(1).)  An order for victim restitution "shall identify the losses to which it pertains, and
shall be enforceable as a civil judgment . . . ."  (§ 730.6, subd. (i).)

" ' "In keeping with the [voters'] 'unequivocal intention' that victim restitution be
made, statutory provisions implementing the constitutional directive have been broadly
and liberally construed." ' [Citations.]" (*Luis M*., *supra*, 59 Cal.4th at p. 305.)  Section
730.6 grants the minor "the right to a hearing to dispute the determination of the amount
of restitution," and empowers the court to modify any orders it makes.  (§ 730.6, subd.
(h).)

## II. *Standard of Review*

"Generally speaking, restitution awards are vested in the trial court's discretion
and will be disturbed on appeal only where an abuse of discretion appears.  [Citation.]
Like most generalizations, however, this one can lead to errors if not applied with
circumspection.  No court has discretion to make an order not authorized by law, or to

10

find facts for which there is not substantial evidence.  A reviewing court will generally examine an issue of law independently of a lower tribunal's ruling.  [Citation.]  Its determination on an issue of fact is reviewed under the substantial evidence standard.  [Citation.]  The standard of review therefore depends on the nature of the question presented."  (*In re K.F.* (2009) 173 Cal.App.4th 655, 661 (*K.F.*); *Luis M.*, *supra*, 59 Cal.4th at p. 305 [victim restitution order reviewed for abuse of discretion].)

### III.  *Arbuckle*

The minor argues that restitution is part of sentencing and asserts that since restitution is part of sentencing, the juvenile court erred as a matter of law and violated his rights under *Arbuckle* when it refused to continue the restitution hearing to allow Judge Johnson—the judge who had taken his plea—to hear the contested restitution matter.  The minor adds that since Judge Johnson presided over his case for almost two years, she was "intimately familiar" with the case and the parties.  He notes also that Judge Johnson heard victim impact statements from Female Victim and Victims' Mother at the disposition hearing.

The Attorney General responds that none of the legal authority cited by the minor supports the claim that he had a right to a hearing on victim restitution before the same judge who determined disposition.  The Attorney General argues that *Arbuckle* expresses no view regarding victim restitution hearings and that the minor has not demonstrated prejudice:  how a restitution hearing before Judge Johnson would have resulted in a better outcome.

### A.  The Rule of *Arbuckle*

In *Arbuckle*, the defendant entered a plea before Judge Robert London.  Sentencing was delayed by a motion and writ petition related to sentencing.  (*Arbuckle*,

11

*supra*, 22 Cal.3d at pp. 752-753.) While the writ was pending, Judge London transferred to another department. After the writ was denied, the case was assigned to Judge Raymond Roberts, who imposed a prison sentence. The defendant objected to being sentenced by Judge Roberts and insisted he was entitled to be sentenced by Judge London under the terms of his plea bargain. (*Id.* at p. 753.)

The Supreme Court's analysis of this question in *Arbuckle* was quite short. (*Arbuckle*, *supra*, 22 Cal.3d at pp. 756-757.) The court stated, "We agree that the plea bargain herein was entered in expectation of and in reliance upon sentence being imposed by the same judge. Our conclusion is supported by the judge's repeated use of the personal pronoun ["I"] when referring to sentencing in the proceeding in which the plea bargain was accepted." (*Id.* at p. 756.) Judge London had told the defendant: " 'I have agreed, as has your attorney, . . . , that before I could send you to the State Prison, I would have to get that 90-day diagnostic study and I would follow that recommendation." (*Id.* at p. 756, fn. 4.) The Supreme Court also stated: "As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea. [Citations.]" (*Id.* at pp. 756-757, footnote omitted, citing a treatise, a law review article, and two books.) The court held: "Because the defendant has been denied that aspect of his plea bargain, the sentence imposed by another judge cannot be allowed to stand. [Citations.] The defendant is entitled to be sentenced by Judge London, or if internal court administrative practices render that impossible, then in the alternative [the] defendant should be permitted to withdraw his plea." (*Id.* at p. 757.) The court clarified: "If the original judge is not available for sentencing purposes after a plea bargain, the defendant must be given the option of

12

proceeding before the different judge available or of withdrawing his plea." (*Id.* at p. 757, fn. 5.)

The *Arbuckle* right is not a constitutional or a statutory right; it is contract right recognized in the case law. (*People v. McIntosh* (2009) 177 Cal.App.4th 534, 541 ["*Arbuckle* was not premised on constitutional or statutory mandates, but rather on contract principles"]; *In re James H.* (1985) 165 Cal.App.3d 911, 921 (*James H.*) [*Arbuckle* is " 'a hybrid, judicially promulgated contractual right' "].)

## B. *Arbuckle* and Restitution Hearings in Juvenile Court

In determining whether the minor had a right under *Arbuckle* to have Judge Johnson preside over the restitution hearing, we first examine the question whether *Arbuckle* applies to restitution hearings in juvenile court.

The minor asserts "*Arbuckle* applies generally in juvenile cases." The Attorney General disagrees, arguing that proposition is currently pending before the California Supreme Court in *K.R. v. Superior Court* (2015) 243 Cal.App.4th 495 (*K.R.*), review granted March 9, 2016, S231709. The Attorney General does not brief the point further. In his reply, the minor agrees that the question whether *Arbuckle* applies in juvenile cases is pending before the Supreme Court in *K.R.*

We disagree with the parties on this point. The issue in *K.R.* is not whether *Arbuckle* applies in juvenile cases. That question was settled long ago. In *In re Mark L.* (1983) 34 Cal.3d 171 (*Mark L.*), the California Supreme Court stated: "*Arbuckle* has been extended to dispositions by judges in juvenile cases." (*Mark L.*, at p. 177, citing *In re Thomas S.* (1981) 124 Cal.App.3d 934, 937 (*Thomas S.*) and *In re Ray O.* (1979) 97 Cal.App.3d 136, 139-140; see also *James H.*, *supra*, 165 Cal.App.3d at p. 917.) The court also applied *Arbuckle* in *Mark L.*, a juvenile case. (*Id.* at pp. 174, 179-181.)

13

The issue in *K.R.* is whether the minor in that case was entitled to a disposition hearing before the same judge who accepted his admission when the minor did not demonstrate individualized facts establishing that a disposition hearing before the same judge was an implied term of his plea agreement.[4] Thus, the question presented in *K.R.* is the nature of the showing required for *Arbuckle* to apply, not whether *Arbuckle* applies in juvenile court proceedings.

Unlike *Arbuckle* and cases that apply *Arbuckle* (see e.g., *James H.*, *supra*, 165 Cal.App.3d at pp. 915, 919), the same judge who took the minor's admission (Judge Johnson) presided over his disposition hearing. At disposition, Judge Johnson placed the minor on probation, imposed various conditions of probation, and ordered the minor to pay victim restitution, with the amount to be determined at a later date. The question here is whether, after Judge Johnson ordered victim restitution, the minor was also

---

[4] In *K.R.*, the Court of Appeal stated that *Arbuckle* first engaged in an *individualized analysis* and held, based on what Judge London said when he took the plea, that the defendant entered into the plea agreement " 'in expectation of and in reliance upon sentence being imposed by the same judge.' " (*K.R.*, *supra*, 243 Cal.App.4th at p. 505, quoting *Arbuckle, supra*, 22 Cal.3d at p. 756.) However, in the next paragraph, *Arbuckle* appears to announce a *broad general rule* that " '*whenever* a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge.' " (*K.R.* at p. 505, quoting *Arbuckle*, at pp. 756-757.) The *K.R.* court noted that after *Arbuckle,* some courts applied the broad general rule and others applied the individualized analysis. The *K.R.* court stated, however, that it has been settled for more than 25 years that *Arbuckle* applies only when the defendant or minor can demonstrate specific facts showing "the plea was given 'in expectation of and in reliance upon sentence [or disposition] being imposed by the same judge' " who took the plea. (*K.R.*, at pp. 508-509, quoting *Arbuckle*, at p. 756 and citing *James H.*, *supra*, 165 Cal.App.3d at p. 920, *People v. Ruhl* (1985) 168 Cal.App.3d 311, 315-316 (*Ruhl*), and *People v. Horn* (1989) 213 Cal.App.3d 701, 707-708 (*Horn*).) In *K.R.*, the Court of Appeal held that the minor had not made the requisite factual showing to demonstrate that *Arbuckle* applied in his case. (*K.R.*, at pp. 695-696.)

14

entitled to have Judge Johnson preside over the contested hearing to determine the amount of victim restitution.

The parties do not cite any cases that address the question whether *Arbuckle* applies to contested restitution hearings and this appears to be a question of first impression. The minor argues he was entitled to have Judge Johnson preside over the restitution hearing because "restitution is part of . . . sentencing" and since restitution is part of "sentencing," the determination of the amount of restitution is subject to *Arbuckle*.

*Arbuckle* does not apply in all criminal or juvenile court proceedings. In *People v. Miskiewicz* (1984) 158 Cal.App.3d 820, 824-825, the court held the *Arbuckle* right does not extend to a defendant who enters a felony plea before a magistrate pursuant to Penal Code section 859a. This was because Penal Code section 859a provides that upon entry of the felony plea, the magistrate shall immediately certify the case to superior court, and the defendant was so advised in *Miskiewicz*. (*Ibid*.; see also *People v. Guerra* (1988) 200 Cal.App.3d 1067, 1071-1072)

The *Arbuckle* right also does not apply to sentencing in probation revocation proceedings, which might occur months or years after the plea bargain. (*People v. Martinez* (2005) 127 Cal.App.4th 1156, 1159-1160, citing *People v. Beaudrie* (1983) 147 Cal.App.3d 686, 693-694; *People v. Watson* (1982) 129 Cal.App.3d 5, 8.) The *Martinez* court stated: " 'there is a distinction between a sentencing hearing following a plea of guilty and a sentencing following a revocation hearing. [The defendant in *Martinez*] was sentenced by the same judge who accepted his original plea. Sentence was suspended and he was placed on probation. Once that sentence was imposed, *Arbuckle* no longer applied.' " (*Id.* at p. 1159.) The court reasoned, "Multi-judge superior courts act as one superior court" and the departments within the court "operate under the presumption that they are jurisdictionally equivalent and fungible. *Arbuckle*, resting on contract principles, created a limited exception to the fungibility of superior

15

court departments." (*Ibid.*) The court then weighed "*Arbuckle's* reasoning against the practical concerns of sentencing outside a plea bargain" and found "those reasons wanting." The court concluded that the passage of time "creates a lower expectation that—unlike at the time of the plea bargain—the original sentencing judge will still be available, let alone hearing criminal matters," and that practical problems—particularly those related to court security—abound. Consequently, any expectation the defendant might have that the original judge would sentence him on the probation violation was unreasonable. (*Id.* at p. 1160.)

In juvenile court proceedings, victim restitution "shall be imposed in the amount of the losses, as determined." (§ 730.6, subd. (h)(1).) If the amount of victim restitution cannot be ascertained at the time of disposition, "the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of commitment or probation." (§ 730.6, subd. (h)(1).) "If the amount of victim restitution is not known at the time of disposition, the court order shall identify the victim or victims, . . . , and state that the amount of restitution for each victim is to be determined," as was done in this case. (§ 730.6, subd. (h)(2).) When the court has reserved jurisdiction to determine restitution, it may direct the probation officer to determine the amount of restitution. (*In re Karen A.* (2004) 115 Cal.App.4th 504, 510-511, citing § 730.6, subd. (h).) The minor has a right, however, to challenge the probation officer's determination in court. (*Id.* at p. 511, fn. 9; § 730.6, subd. (h).) After the court makes a restitution order, the minor's obligation to pay victim restitution may extend beyond the expiration of wardship and into adulthood. (*In re Michael S.* (2007) 147 Cal.App.4th 1443, 1456.) An order for victim restitution is enforceable as a civil judgment. (§ 730.6, subd. (l).)

Since the statutory scheme permits the juvenile court to make a restitution award any time during wardship and allows the court to delegate the determination of the

16

restitution amount to the probation officer, the restitution hearing here is more like the probation revocation hearing at issue in *Martinez* than the initial sentencing at issue in *Arbuckle*.  Indeed, the type of delay the court expressed concerns about in *Martinez* occurred here:  the contested restitution hearing took place almost eight months after the court took the minor's admission and more than six months after the disposition hearing. We conclude that in contested restitution hearings in juvenile cases, as with sentencing on probation violations, any expectation the minor may have that the original judge would conduct the hearing was unreasonable.  (*Id.* at p. 1160.)  We therefore conclude that the right afforded by *Arbuckle* does not apply to contested victim restitution hearings in juvenile court.

### C.  Prejudice

Even if we were to conclude that *Arbuckle* applied to restitution hearings in juvenile court, and assuming the minor could demonstrate a factual basis for concluding he had a reasonable expectation that the restitution hearing would be before Judge Johnson, we would hold that any error under *Arbuckle* was harmless.

Generally, the remedy for *Arbuckle* error is to remand for a new restitution hearing before the judge who took the admission, Judge Johnson in this case.  And if that is impossible, the minor should be given the opportunity to withdraw his admission. (*Arbuckle*, *supra*, 22 Cal.3d at p. 757.)  However, one court has considered whether the minor was prejudiced by alleged *Arbuckle* error, applying the prejudice standard from *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).  (*James H.*, *supra*, 165 Cal.App.3d at pp. 921-922.)

As we have noted, the victims' parents requested $26,301.39 in victim restitution. Judge Nichols disallowed the amounts claimed as the rental value of the unoccupied bedroom, which was more than half of the amount claimed, and ordered the minor to pay

17

$12,501.39 in victim restitution. As we shall explain in the next section, we reject each of the minor's claims of error regarding the amounts awarded by Judge Nichols as victim restitution. The primary problem with the minor's attack on the restitution order here is that the minor did not meet his burden of presenting evidence demonstrating that any of the amounts claimed were excessive.

The minor argues: "Judge Johnson was in a better position to review 'compelling and extraordinary reasons' not to order full restitution." Indeed, section 730.6, subdivision (h)(1) provides that the juvenile court "shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." But the minor did not argue below that there were compelling and extraordinary reasons for not ordering full restitution, he simply attacked the reasonableness of the amounts claimed. He has, therefore, forfeited any such claim on appeal. Moreover, other than the brief reference quoted above, the minor does not develop this point on appeal or state what the compelling and extraordinary reasons for not awarding full restitution were. We therefore reject this argument.

Finally, having reviewed the entire record, we conclude the minor received a fair hearing on the question of victim restitution.

Since the minor received a fair hearing and we find no error in Judge Nichols's restitution order because the minor did not meet his evidentiary burden below, there is no reasonable likelihood the minor would have obtained a more favorable restitution order if Judge Johnson had presided over the restitution hearing. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

18

## IV. Challenges to Restitution Order

The minor argues the juvenile court erred when it ordered him to pay $2,190.45 to replace Male Victim's bedroom items and clothing and $2,550.94 for a "special breed" therapy dog.

### A. Additional Facts Regarding Restitution Hearing

As we have noted, the victims' restitution claim included: (1) $4,655.00 in wages lost by the victims' father to attend court hearings and medical and therapy appointments; (2) $13,800 for the rental value of Male Victim's unoccupied bedroom; (3) $2,190.45 to replace Male Victim's bedroom furniture, décor, and clothing; and (4) $2,550.94 for a therapy dog. The amount claimed for bedroom furnishings and clothing included: $1,235.45 for a queen-sized mattress and mattress protector, $100 for a bed frame, $100 for two drawers, $400 for a four-drawer chest, $50 for curtains, $100 for a rug, $130 for a bed linens, and $75 for the pants and shoes Male Victim wore during the last molest incident. The amount claimed for the therapy dog included: $725 to purchase an eight-week-old, purebred Labrador Retriever puppy; $366 for six months of veterinary insurance ($61 per month); $21 for vaccinations; $31.80 for flea medication; $54 for a veterinary examination; $569 for puppy training and veterinary care; $30 to register the dog with the American Kennel Club; a $20 city licensing fee; $234.14 to have the dog spayed; and $500 to cover gas, food, and hotel expenses to pick up the dog from Temecula, California.

At the restitution hearing, Victims' Mother testified that before October 2013, her children had their own bedrooms. Some of the abuse occurred in Male Victim's room. Victims' Mother said that after they learned about the molestations, "[n]o one ever entered in that bedroom again." The children were having "too many" nightmares, could not sleep by themselves, and started sleeping with their mother. Victim's Mother did not

want to have the bedroom items and clothing in her home "a second longer" and donated them to Goodwill. Male Victim was seeing a psychiatrist.

The parties stipulated that the lost wages incurred by the victims' father to attend court hearings, therapy sessions, and doctor's appointments was $4,655. In argument, the minor challenged the causal connection between his conduct and the bedroom rental and the disposal of Male Victim's bedroom furnishings. He also challenged the reasonableness of purchasing a purebred therapy dog and the amounts claimed for the bedroom items.

As we have noted, Judge Nichols denied the $13,800 claim for the rental value of the unoccupied bedroom, awarded the other items claimed, and ordered the minor to pay $12,501.39 in victim restitution.

## B. Procedural Rules Governing Victim Restitution Claims

The victim seeking restitution has the burden of presenting "an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664 (*Giordano*).) Once the victim makes a prima facie showing of economic losses incurred as a result of the minor's conduct, the burden shifts to the minor to disprove the amount of the losses claimed by the victim. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 (*Gemelli*), citing *People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) The minor has the burden of rebutting the victim's statement of losses, and may submit evidence to prove the amount claimed is excessive. (*Gemelli*, at p. 1543.) "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]' [Citation]." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

"[T]he court in making a restitution order is not required to determine the 'exact amount of loss,' so long as it employs 'a rational method that could reasonably be said to make the victim whole,' and is not 'arbitrary and capricious.' " (*K.F.*, *supra*, 173

Cal.App.4th at p. 666, citing *People v. Thygesen* (1999) 69 Cal.App.4th 988, 992.) "[M]ethodological imprecision" does not amount to an abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 666.) Still, no court has discretion to award restitution "not authorized by law, or to find facts for which there is not substantial evidence." (*K.F.*, *supra*, 173 Cal.App.4th at p. 661.)

### C. Bedroom Items and Clothing

The minor argues that since there was no evidence of any physical damage to the bedroom items and clothing, those items did not need to be replaced. He also contends there was no causal connection between his conduct and the loss of those items. In addition, he asserts the court erred in ordering restitution for those items because it did not consider the victims' failure to mitigate their losses.

The victims' parents requested $2,190.45 to replace Male Victim's bedroom items and the pants and shoes he was wearing the day Victims' Mother discovered the sexual abuse. After she discovered the abuse, both victims stopped sleeping in their rooms and started sleeping with their mother. They were having "too many" nightmares and could not sleep by themselves. Male Victim was seeing a psychiatrist. Some of the abuse occurred in Male Victim's room and Victims' Mother testified that after the conduct was discovered, "[n]o one ever entered in that bedroom again." Victims' Mother was so repulsed by the minor's conduct she did not want to have the bedroom items and clothing in her home "a second longer" and donated them to charity. At the time of the restitution hearing, the family planned to move; Victim's Mother testified it was time for her children to start sleeping in their own beds and said she needed to replace the donated items.

Section 730.6 provides that economic losses for the purpose of victim restitution include: "Full or partial payment for the value of stolen or *damaged* property. The value

21

of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 730.6, subd. (h)(1)(A); italics added.) The losses listed in section 730.6, subdivision (h)(1) are illustrative, not exclusive. (*In re M.W.* (2008) 169 Cal.App.4th 1, 5 (*M.W.*) [cost of mental health services recoverable even though not enumerated in section 730.6].) The term "economic loss" in section 730.6 "must be given an expansive interpretation because any interpretation that limits a victim's rights to restitution would derogate the expressed intent and purposes of" the constitutional mandate and implementing statutes. (*Ibid.*)

The minor's arguments require us to interpret the word "damaged" in section 730.6 subdivision (h)(1)(A). The statute does no expressly define the term and the parties do not cite any cases that have construed it. The rules governing interpretation of statutes are settled. In any case involving statutory interpretation, our fundamental task is " 'to determine the Legislature's intent so as to effectuate the law's purpose.' [Citations.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Los Angeles County Metropolitan Transp. Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.)

Although the bedroom items and clothing were not "damaged" in the sense that they were destroyed, broken, scratched, or otherwise physically damaged, they were damaged in the eyes of the victims because of the negative memories and fears associated with them.  In ordering restitution for these items, Judge Nichols stated:  "I can see that a parent who is raising a child would be repelled at the conduct that led to the court having to take jurisdiction and want to get rid of the evidence of that."  As the Attorney General argues, Victims' Mother "understandably did not want her son to be reminded of the assault on a daily basis by seeing the setting in which it had occurred, . . . further exacerbating his trauma."  Section 730.6, subdivision (h)(1)(A) does not contain any terms qualifying the word "damaged" or limiting the type of damage for which restitution may be ordered to physical damage.  The statute has been interpreted to cover mental health services, even though such services are not specifically enumerated in section 730.6, subdivision (h)(1).  (*M.W.*, *supra*, 169 Cal.App.4th at p. 5.)  Giving the statutory language an expansive interpretation, we conclude it covers the situation presented here.  Ordering restitution for the discarded bedroom items is also consistent with the rehabilitative purpose of victim restitution.

Moreover, there is no indication the victims obtained any kind of windfall by receiving the replacement cost of these items.  (*Anthony M.*, *supra*, 156 Cal.App.4th at pp. 1017-1018 [restitution order compensates victim for actual losses and is not intended to provide victim with a windfall].)  Victims' Mother had donated the bedroom items and they were no longer in the victims' home.  The amounts claimed for the bedroom items other than the mattress were modest.  As for the clothing, the victims claimed only the cost of pants and shoes Male Victim wore at the time of the last incident.  The largest component of this claim was $1,235.45 for a queen-sized mattress and mattress

23

protector.[5] The minor did not present any evidence challenging that amount. For example, he could have obtained a cost estimate from one or more mattress retailers and shown that it was possible to buy a replacement mattress for less than the amount claimed. However, the minor did not present any evidence challenging the value of any of the components of this claim. We therefore conclude the minor did not meet his burden of proving the amount claimed was excessive.

Citing *People v. Jones* (2010) 187 Cal.App.4th 418 (*Jones*) and *People v. Holmberg* (2011) 195 Cal.App.4th 1310 (*Holmberg*), the minor argues there is no causal connection between his conduct and the loss of the bedroom items.

Section 730.6, subdivision (h)(1) provides that an order for victim restitution "shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic loss incurred *as the result of the minor's conduct . . . .*" (Italics added.) The italicized language "is language of causation." (*In re A.M.* (2009) 173 Cal.App.4th 668, 673 (*A.M.*).)

Interpreting analogous language from Penal Code section 1202.4, subdivision (f)(3), which governs victim restitution in adult criminal cases, the *Jones* court held that tort principles of causation apply to victim restitution claims. The court observed that there "are two aspects of causation . . . :  cause in fact (also called direct or actual causation), and proximate cause." (*Jones*, *supra*, 187 Cal.App.4th at p. 424.) The court explained that " '[a]n act is a cause in fact if it is a necessary antecedent of an event' " and that " 'proximate cause "is ordinarily concerned, not with the fact of causation, but

---

[5] The minor argues it cost $1,235.45 to replace the mattress. In fact, the amount claimed was what the victims' parents paid when they bought the mattress and mattress protector in July 2012, about 14 months before the minor's conduct began. At the time of the hearing, the victims' parents had not yet replaced it. The original cost may be evidence of replacement cost. (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1178 (*Chappelone*).)

with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." ' " (*Id*. at p. 425.)

The "but for" rule has traditionally been applied to determine cause in fact. California courts, however, have adopted the "substantial factor" test in analyzing proximate cause. The term "substantial factor" is used to denote that the defendant's conduct has such an effect in producing the harm as to lead reasonable people to regard it as a cause. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1321.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault.' [Citation.]" (*Id*., at pp. 1321-1322.)

*Jones* illustrates the difference between a cause in fact and proximate cause. The victim in *Jones* sought restitution for damage to her camper caused by a motor vehicle accident for which the defendant pleaded no contest to drunk driving. The victim also sought restitution for damage to her car that occurred in the courthouse parking lot when she went to a hearing in the defendant's case. The court explained that the accident involving the camper was a *cause in fact* of the damage to the victim's car, reasoning that but for the accident with the defendant, the victim would not have been at the courthouse. The defendant, however, disputed whether his conduct was a *proximate cause* of the damage to the car, arguing some intervening cause, i.e., the victim's negligent driving, should relieve him of liability. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1321, citing *Jones*, *supra*, 187 Cal.App.4th at pp. 425, 427.) The court remanded for other reasons and directed the trial court to determine whether the defendant's conduct was a proximate cause of the damage to the car. (*Jones*, at pp. 425, 427.)

25

As to causation, the court in *A.M.*, a juvenile case, stated: "nothing in section 730.6 requires that the minor's conduct be the sole cause of loss by the victim, and such a conclusion would be at odds with the principle that restitution laws are to be broadly and liberally construed. [Citation.]" (*A.M.*, *supra*, 173 Cal.App.4th at p. 673.) The court agreed the substantial factor test was the correct legal test for determining causation in victim restitution cases. (*Ibid.*) The court explained: " 'There may be more than one cause of injury. An act causes injury only if it is a substantial factor in causing the injury. A substantial factor is more than a trivial or remote factor. However, it does not have to be the only factor that causes the injury.' " (*Ibid.*, citing CALCRIM No. 240 and *People v. Sanchez* (2001) 26 Cal.4th 834, 845.)

Although the minor acknowledges the conduct at issue occurred in Male Victim's bedroom, he argues there was no causal connection between his conduct and the loss of the bedroom items. Clearly, the minor's conduct was a cause in fact of the loss of the bedroom items. But for the minor's conduct, Victims' Mother would not have disposed of the items. The minor's argument seems to be that since he did not physically damage the bedroom items, his conduct was not the proximate cause of the loss. He asserts "[t]here is no reason, other than emotion, why the furniture could not continue to be used." We have already construed the word "damage" in section 730.6 to encompass losses due to the victims' emotional response to the minor's conduct. The minor's conduct played more than an infinitesimal or theoretical part in bringing about the loss of the bedroom items; it was more than a remote or trivial cause of the stigma the victims associated with these items. The minor does not argue there was any other contributing cause or an intervening cause that broke the chain of causation for the loss of the bedroom items. We therefore conclude the minor's conduct was a substantial factor in the loss of the bedroom items and clothing.

In addition, the restitution order forces the minor to face the emotional and financial effects of his conduct on the victims' family. It related directly to the minor's rehabilitation, and was an appropriate exercise of the juvenile court's discretion. (*In re I. M.* (2005) 125 Cal.App.4th 1195, 1210.)

The minor argues the court erred because it did not consider the victims' failure to mitigate their losses. He argues the victims could have sold the items on Craigslist or taken a tax write-off for them and that he was entitled to an offset for "these values." He presented no evidence to the juvenile court of what "these values" were.

Mitigation is a concept from civil law. In *In re Brian S.* (1982) 130 Cal.App.3d 523, 531, the court declined to "superimpose the complex law of damages upon juvenile restitution proceedings." The court noted "that one of the purposes of restitution is to make the victim whole" and held "the juvenile court is not required to determine what damages might be recoverable in a civil action but may instead use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole and which is consistent with the purpose of rehabilitation." (*Ibid.*; see also *People v. Superior Court* (*Lauren M.*) (2011) 196 Cal.App.4th 1221, 1225 [court may not order victim or district attorney to negotiate with medical provider for reduction in bill].)

The minor's reliance on *Chappelone*, *supra*, 183 Cal.App.4th 1159 is misplaced. In that case, the court was evaluating a restitution claim by the retail store Target, which was the victim of a massive theft by embezzlement of an undesignated number of items (six semi-trailers full of merchandise) by one of its employees and her spouse. Some of the merchandise was damaged or defective before the theft, some of it had been marked down or would have been donated; most of it was returned to Target. (*Id.* at pp. 1163, 1169.) The appellate court concluded the trial court improperly awarded Target a windfall when it ordered restitution based on the last retail price of the merchandise. (*Id.* at pp. 1173, 1178.) The court also held the trial court abused its discretion and awarded

27

Target a windfall when it both ordered the defendants to pay the full value of the merchandise and allowed Target to keep the merchandise. (*Id.* at pp. 1181-1182.) In the passage cited by the minor, the court commented: "The outcome is even more egregious in light of [Target's investigator's] testimony that Target donated the merchandise but did not even seek a tax writeoff to offset the amount owed by defendants, despite its representation to the court that it would likely do so." (*Id.* at p. 1182.) Target's investigator had testified that it was "likely that Target would donate it all and take a tax writeoff." (*Id.* at p. 1169.) That the court considered that fact in analyzing the restitution order is not the same as requiring the victim to mitigate damages. The minor does not cite any legal authority that requires crime victims to mitigate their losses.

Here, the victims' evidence regarding the value of the bedroom items was sufficient to meet their prima facie burden at the restitution hearing. The burden therefore shifted to the minor to present evidence that the amount claimed was excessive. The minor presented no evidence that the amounts claimed were excessive or that supports the value of the offsets he now claims. The juvenile court did not abuse its discretion when it ordered $2,190.45 in victim restitution for the bedroom items and clothing.

### D. Therapy Dog

The minor argues the court erred in awarding the cost of a special breed dog rather than a "free rescue dog," contends it was error to award travel expenses related to picking up the dog in Temecula, and asserts the amount awarded for the therapy dog should be reduced to $619, the reasonable cost of a rescue dog.

Male Victim's physician recommended a therapy dog and the victims' parents purchased a Labrador retriever from a breeder in Temecula for $725. The victims provided receipts supporting all but one of the components of their claim related to the

28

dog, and Victims' Mother testified as to the costs claimed. She testified they needed a well-trained, skilled dog to be a therapy dog to work with a child that ended up mentally ill and not any dog.

In contrast, the minor presented no evidence that the amounts claimed were excessive, that a rescue dog could be obtained for free,[6] that a rescue dog would be appropriate to meet Male Victim's needs, that the victims could have found an appropriate dog closer to home, or that supported his argument that this claim is worth $619. Since the minor failed to meet his evidentiary burden of demonstrating to the juvenile court that the amounts claimed for the therapy dog were excessive, we reject this claim of error.

## DISPOSITION

The restitution order is affirmed.

---

[6] It is common knowledge that there are fees associated with adopting a dog from a shelter or rescue organization.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

GROVER, J.

*People v. Cristian S.*
**H043104**

Trial Court:

Santa Clara County
Superior Court No.: 313JV40341A

Trial Judge:

The Honorable Leslie C. Nichols (Ret.)

Attorney for Defendant and Appellant
Cristian S.:

Sidney S. Hollar
under appointment by the Court of
Appeal for Appellant

Attorneys for Plaintiff and Respondent
The People:

Kamala D. Harris,
Attorney General

Gerald A. Engler,
Chief Assistant Attorney General

Jeffrey M. Laurence,
Senior Assistant Attorney General

Eric D. Share,
Supervising Deputy Attorney General

Joan Killeen,
Deputy Attorney General

*People v. Cristian S.*
**H043104**